In re INDIAN MOTOCYCLE MANUFACTURING COMPANY, INC., Debtor.

Sterling Consulting Corp., Receiver, Appellant,

v.

Internal Revenue Service and Stephen M. Rodolakis, Chapter 7 Trustee, Appellees.

CIV.A.Nos. 02–40027–REK, 94–42288–HJB.

United States District Court, D. Massachusetts.

Jan. 29, 2003.

Joseph H. Baldiga, Worcester, MA, John M. Tanner, Denver, CO, for Sterling Consulting Corp., Receiver.

Stephen M. Rodolakis, Worcester, MA, for Chapter 7 Trustee, Rodolakis.

Richard King, U.S. Trustee.

Peter Sklarew, Department of Justice, Tax Division, Washington, DC, for Internal Revenue Service.

## Opinion

KEETON, District Judge.

### I. Pending for Decision in These Appellate Proceedings

Pending for decision are the following matters now before this United States district court, associated with appeals from orders of the United States Bankruptcy Court for the District of Massachusetts–Worcester:

(1) Sterling Consulting's Motion to Dismiss (Docket No. 14, filed December 2, 2002);

(2) Response by Stephen M. Rodolakis in Opposition (Docket No. 18, filed December 30, 2002);

(3) Response by United States in Opposition (Docket No. 20, filed December 31, 2002); and

(4) Disposition of the appeals.

## II. Background

Before either of the orders from which this court is now hearing appeals was made by the Bankruptcy Court for the District of Massachusetts–Worcester, other bankruptcy proceedings had occurred.

A submission filed on January 17, 2003, by attorneys for Sterling Consulting Corporation, as Receiver, states:

> After the IRS formally appeared in the Bankruptcy Cases, it moved the Bankruptcy Court to reconsider three of its Orders which were issued prior to the IRS' appearance: The Orders of January 13, 1999, September 21, 1999, and December 30, 1999. This motion was denied, and the IRS appealed in the matter styled *United States of America v. Sterling Consulting Corp., as receiver, and Stephen M. Rodolakis, Chapter 7 Trustee,* BAP No. MB 00–094 (United States Bankruptcy Appellate Panel for the First Circuit) ("BAP II").

On January 8, 2003, the Bankruptcy Appellate Panel issued its opinion in BAP II. BAP II affirmed the Bankruptcy Court denial of the IRS's Motions to Reconsider. The following series of quotations from that opinion summarizes the holding:

> Although neither a party to the settlement, nor a party in interest in the bankruptcy cases at the time of the settlement ... the IRS, as a subsequent administrative expense claimant, was bound by the Trustee's agreement with the Receiver.... The IRS was an administrative tax claimant, not a prefiling creditor, but this Panel sees no reason to distinguish

between administrative claimants and prefiling creditors in this regard....

> The IRS's motion was timely, but no exceptional circumstances justifying relief were given; moreover, had the Bankruptcy Court granted relief, the Trustee and Receiver would have been unfairly prejudiced....

> This Panel has already agreed that the IRS did not have a meaningful opportunity to be heard at the hearing on September 21, 1999, but that deprivation was cured with the filing of the request for relief under Rule 60(b). The IRS's concern with the failure of notice and hearing in the District Court is misplaced. Such a concern should have been addressed to the District Court. Finally, the focus on the superpriority lien claim is also misplaced. The fixing of the amount of the lien claim was only one aspect of an integrated settlement agreement. The 9/21/99 Settlement Order approved the settlement agreement in its entirety. As a result, the Bankruptcy Court was justified in denying reconsideration of one part of the agreement.

BAP II, slip op. pp. 18–20 (internal citations and footnotes omitted).

The significance of BAP II, in addition to the plain ruling, is that the IRS is bound by the prior Orders of the Massachusetts Bankruptcy Court and Colorado District Court, unless it seeks to have those Orders set aside, whether under Rule 60(b) (for final Bankruptcy Orders) or Rule 54(b) for interlocutory Orders of either the Massachusetts Bankruptcy Court or the Colorado District Court. Docket No. 25 at 3.

Another event occurring before the orders now on appeal were made was that the United States District Court for the District of Colorado, in which the Receiv-

ership was pending, issued an order regarding tax liabilities of entities acquired by the Receiver, imposed a deadline on the IRS for tax determinations, and enjoined the IRS from assessing and collecting taxes for failure to evaluate tax returns by the court-imposed deadline. On interlocutory appeal, the Court of Appeals for the Tenth Circuit reversed, holding that the district court lacked jurisdiction to grant declaratory judgment regarding tax liabilities and lacked jurisdiction to enjoin the IRS from assessing and collecting taxes. *Sterling Consulting Corporation, Appellee v. U.S., Intervener–Appellant*, 245 F.3d 1161 (10th Cir.2001). That decision was made on April 10, 2001.

On August 3 and November 21, 2001, the Bankruptcy Court for the District of Massachusetts–Worcester made orders from which the Receiver appealed to this district court. The following are the orders from which the Receiver appealed here:

In Civil Action No. 01–40180–REK in the District Court, the Bankruptcy Court order of August 3, 2001. *In re Indian Motocycle Company, Inc.*, 266 B.R. 243 (Bankr.Mass.2001).

In Civil Action No. 02–40027–REK in the District Court, the Bankruptcy Court's injunction and associated rulings of November 21, 2001. *In re Indian Motocycle, Inc.*, 2001 WL 1673643 (Bankr.Mass.2001).

The provisions of the Bankruptcy Court's opinion and order of August 3, 2001, are summarized in the headnotes of the published opinion in the following way:

Following agreement between receiver and Chapter 7 trustee settling dispute over disposition of $3.5 million in proceeds from court-approved sale of debtors' trademarks, bankruptcy court entered order which approved trustee's final accounts, directed that assets of estate be distributed in accordance therewith, and, estimating the bankruptcy estates' federal tax obligation to be $1.2 million for purposes of distribution, but abstaining from determining debtors' postpetition tax liabilities, granted trustee leave to transfer $1.2 million to receiver to be held in escrow for payment of government's tax claim as determined by Colorado district court. Federal government appealed. The Bankruptcy Appellate Panel (BAP), Vaughn, J., reversed and remanded. Seeking to recover the escrowed funds from receiver and to halt receiver's efforts to elicit discovery from the United States in the Colorado receivership proceeding, federal government filed ex parte emergency motion to enforce the BAP's judgment and the automatic stay. Receiver filed motion to change venue to the United States District Court for the District of Colorado. After denying the government ex parte relief, the Bankruptcy Court, Henry J. Boroff, J., held that: (1) since at least the date on which the bankruptcy court approved the settlement motion, the $3.5 million allocated to the bankruptcy estates had been property of the bankruptcy estates, not the receivership estate; (2) because purpose of the escrow failed when bankruptcy court's order authorizing the transfer was reversed, and because receiver was a "custodian" of estate property within meaning of the Bankruptcy Code, receiver was required to return the escrowed funds to trustee; (3) escrowed funds, which were in a bank account held by receiver, were not in "custodia legis" of the district court; (4) receiver did not violate the automatic stay by continuing to hold the escrowed funds, even after date of the BAP's decision; (5) receiver would be ordered to remit to trustee $1.2 million, plus inter-

est accrued on and after a specified date, and would be directed to file an accounting with respect to interest earned on the escrowed funds prior to that date; (6) receiver's attempt on and after date of the BAP's decision to conduct discovery in the district court relative to the United States' claim in the bankruptcy cases violated the automatic stay and would be enjoined; (7) federal government was not entitled to monetary damages arising from receiver's stay violation; and (8) proper consideration of the relevant factors weighed against transferring venue of case to the District of Colorado.

Ordered accordingly.

266 B.R. 243 (*In re Indian Motocycle Company, Inc., Debtor* (2001)).

The Bankruptcy Court's Order of November 21, 2001, is quoted here in full:

Upon the "U S. Motion … To Enforce the Automatic Stay in Respect to Certain Acts by the Receiver" filed on September 19, 2001; and having considered (i) the objection thereto filed by Sterling Consulting Corporation, as Receiver (the "Receiver"), on September 21, 2001, (ii) the United States' reply filed on September 28, 2001, (iii) the United States' request for judicial notice filed on October 31, 2001, (iv) the documents of which this Court granted judicial notice by order of November 1, 2001, and (v) the arguments presented at the hearing held on November 5, 2001 by the United States, the Receiver, Stephan Rodolakis as trustee in bankruptcy (the "Trustee") of these bankruptcy estates (the "Bankruptcy Estates") and the United States trustee; and for and consistent with the various findings and rulings made by this Court in its order of August 3, 2001 and specifically those made identifying the property of these Bankruptcy Estates and the exclusive jurisdiction of this Court to determine claims against such property this Court:

1. FINDS AND RULES that:

a. this Court has exclusive jurisdiction over (i) the determination of the administrative taxes of the Bankruptcy Estates; (ii) the determination of any claims (secured or unsecured) by the Receiver against the Bankruptcy Estates; and (iii) the funds a located [sic] to the Bankruptcy Estates by virtue of the settlement approved by this Court on September 21, 1999 (the "1999 Settlement"); b. the Receiver has violated the provisions of 11 U.S.C. §§ 362(a)(1) (staying a judicial proceeding to recover a prepetition claim), §§ 362(a)(6) (staying acts to collect a prepetition claim), and 11 U.S.C. §§ 362(a)(3) (staying acts to perfect or enforce liens against property of the estate) in seeking to enhance its ability to receive a distribution on its prepetition claim against the debtors by asking the United States District Court for the District of Colorado (the "Colorado Court") to bind the United States to the 1999 Settlement between the Trustee and the Receiver, or to perfect, as against the United States, its alleged superpriority lien claim against the Bankruptcy Estates, approved in the 1999 Settlement; and c. the Receiver has violated 11 U.S.C. §§ 362(a)(3) by seeking to use the process of the Colorado Court to collaterally attack this Court's determination, as part of its August 3, 2001 Memorandum of Decision and Order, that the $1.2 million escrowed pursuant to this Court's December 30, 1999 Order and certain interest earned thereon was and continues to be property of the Bankruptcy Estates;

2. ENJOINS AND RESTRAINS the Receiver, its principals, agents and attorneys from prosecuting any motions or complaints filed with the Colorado Court

(including any request for relief contained in any paper, whether or not denominated as a "motion" or "complaint") and from filing any further papers with any court other than this Court (unless in a direct appeal from an order of this Court) for the purpose of obtaining a judgment, decree, or other order that directly or indirectly (a) determines any administrative claim for taxes due from the Bankruptcy Estates or otherwise impedes the ability of the United States to assert any such claim; (b) determines the validity or priority of the Receiver's claims against the Bankruptcy Estates; or (c) seeks to quiet title or otherwise determine the distribution of any funds now in possession of the Trustee or the interest which may have accrued on any funds distributed by the Trustee to the Receiver by virtue of this Court's order of December 30, 1999 or requires the Trustee to turn over any portion of such funds to the Received EXCEPT THAT nothing herein shall be deemed to preclude or prohibit:

a. the parties from attending and participating in such settlement conferences as the Colorado Court shall schedule in its discretion, with the understanding that the Trustee has no authority to enter into any binding settlement of disputes which impact the property of the Bankruptcy Estates absent approval of this Court, pursuant to Fed. R. Bankr.P. 9019; or

b. the Receiver from seeking:

1. authorization from the Colorado Court to request any relief from this Court (or from any appellate court in direct appeal from an order of this Court) including, without limitation, a request that this Court or any such appellate court review, reconsider or stay any order of this Court or any such appellate court; or

2. any other orders or instructions from the Colorado Court, except to the extent that such orders or instructions would constitute a judgment, order or other relief that would violate the injunction set forth in Paragraph 2 above;

3. DENIES WITHOUT PREJUDICE, the request of the United States that the Court declare void, in advance, any future determination which the Colorado Court might make as a result of the aforesaid violations of the automatic stay by the Receiver. Such a request is, at best, premature.

*The Clerk of this Court is directed to telefax copies of this Order to counsel for the parties hereto, in addition to such other service as the Federal Rules of Bankruptcy Procedure may require.*

2001 WL 1673643, *1–*2 (November 21, 2001) (footnotes omitted). Omitted footnote 2 declared:

Nothing herein shall be construed to reflect a finding or ruling by this Court that the United States is not so bound or that the said lien is not so perfected against the United States.

*Id.* at *1.

After the orders now on appeal to this district court, in Civil Action No. 01–40180–REK and Civil Action No. 02–40027–REK, were made, the Receiver moved before the Judicial Panel on Multidistrict Litigation that the six actions pending in the District of Massachusetts be transferred to the District of Colorado for consolidated MDL proceedings before Judge Weinshienk. This motion was denied by the MDL Panel by Order of June 17, 2002, with the following explanation:

This litigation consists of seven purported civil actions listed on the attached Schedule A and pending in two federal districts as follows: six actions pending in the District of Massachusetts

and one action pending in the District of Colorado. Plaintiff in the Colorado action moves the Panel, pursuant to 28 U.S.C. § 1407, for an order centralizing this litigation in the District of Colorado. All responding parties oppose the motion.

On the basis of the papers filed and hearing session held, the Panel finds that Section 1407 centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation. Movant has failed to persuade us that any common questions of fact and law are sufficiently complex, unresolved and/or numerous to justify Section 1407 transfer in this docket in which certain constituent matters have been pending for nearly nine years. We point out that alternatives to transfer exist that can minimize whatever possibilities there might otherwise be of duplicative discovery and/or inconsistent pretrial rulings. *See, e.g., In re Eli Lilly and Company (Cephalexin Monohydrate) Patent Litigation,* 446 F.Supp. 242, 244 (J.P.M.L. 1978). *See also Manual for Complex Litigation, Third,* § 31.14 (1995).

IT IS THEREFORE ORDERED that the motion, pursuant to 28 U.S.C. § 1407, for centralization of the matters listed on Schedule A is denied.

*In re Indian Motorcycle Bankruptcy and Receivership Litigation,* MDL No. 1469, 206 F.Supp.2d 1365 (June 17, 2002).

### III.  More About Changing IRS Positions

The opinion in BAP No. MB 00–094, dated January 8, 2003, tells more about changing IRS positions over the course of years before the orders now before this court in these appellate proceedings were made. After reciting extensive background and stating the standard of review it applies, this BAP opinion continues:

### A.  The Original Rule 60(b) Motion

The IRS asked the Bankruptcy Court to vacate that part of the 12/30/99 Tax Cap Order which placed a $1.2 million cap on tax liability because taxes owing as a consequence of the sale and allocation of proceeds were likely to exceed that amount, relying upon Rule 60(b)(1) (mistake, inadvertence or surprise), (2) (newly discovered evidence) and (4) (judgment is void). Conditioned upon the grant of that relief, the IRS also sought to vacate that part of the 1/13/99 Sale Order which tentatively allocated no more than $3.5 million of the proceeds of sale to the bankruptcy estates under Rule 60(b)(6) (any other reason justifying relief) because (1) it was premised on the Trustee's business judgment that all claims would be paid in full; (2) the IRS was not a party at the time of the entry of the order; (3) it would be grossly unfair not to reconsider the allocation in view of the IRS's estimate of its administrative tax claim arising out of the sale because the allocation of proceeds was apparently based upon debt rather than asset value; and (4) the Trustee's allocation would be further diminished by the Receiver's superpriority lien claim. In the alternative, the IRS asked the Bankruptcy Court to vacate that part of the 9/21/99 Settlement Order which fixed the amount of the Receiver's superpriority lien claim at $550,000. Relief from this order was sought under Rule 60(b)(2) and (6) on grounds that (1) the IRS was not a party at the time of the entry of the order; (2) it did not participate in corresponding proceedings before the District Court; and (3) the agreed upon value of the Receiver's superpriority lien would come off the top of the $3.5 mil-

lion and further reduce the amount available for distribution to the IRS from the bankruptcy estates.

The Bankruptcy Court's denial of relief was in the form of a simple, handwritten, marginal indorsement stating "DENIED," leaving this Panel with little insight into the Bankruptcy Court's reasoning. We do not know if the bankruptcy judge considered the conditional and alternative nature of the motion and simply premised his denial of relief from the 1/13/99 Sale Order and the 9/21/99 Settlement Order upon his denial of the 12/30/99 Tax Cap Order, or if he dealt with each request separately. Moreover, by the time the IRS filed its brief in this appeal, its original condition— that the $1.2 million tax cap be set aside—had been met through *Indian I*, thus eliminating the need for further review by this Panel of the Bankruptcy Court's denial of relief from the 12/30/99 Tax Cap Order. *See Indian I [In re Indian Motocycle Co.]*, 261 B.R. [800] at 805 [(1st Cir. BAP 2001)] ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed.") (quoting *Church of Scientology of California v. U.S.*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)).

## B. The New and Improved Rule 60(b) Motion

Recognizing its success in *Indian I* to be of dubious value without a source of payment of its administrative tax claim, beyond the 1.2 million dollars which had been set aside, the IRS changed its approach to the other two underlying orders on appeal. Instead of leading with that part of the 1/13/99 Sale order which provisionally allocated up to $3.5 million for the payment of claims in the bankruptcy cases as it had in its Rule 60(b)

motion in the Bankruptcy Court, the IRS has asked this Panel, in its brief and again at oral argument, to switch the order of the alternatives and look first at that part of the 9/21/99 Settlement Order which fixed the value of the Receiver's superpriority lien claim at $550,000.

Three major reasons were given for this change in approach on appeal. The first is jurisdictional. The IRS contends that the Bankruptcy Court has exclusive jurisdiction of the superpriority lien claim. So, were we to reverse the denial of rule 60(b) relief with regard to the order fixing the value of that lien claim and remand with instructions, the IRS presumes that it would be able to seek meaningful relief in the Bankruptcy Court without having to approach the District Court. On the other hand, the IRS now asserts that our reversal of the tentative allocation aspect of the 1/13/99 Sale Order would be of little significance without parallel relief from the District Court, the likelihood of which it believes to be doubtful.

The second reason is timing. The IRS concedes in its brief "that, at least at this time, it cannot demonstrate that it is entitled to have the $3.5 million cap on the amount available to pay bankruptcy claims vacated as a matter of law." Opening Brief of Appellant at 6. This statement alone is a sufficient basis for sustaining the Bankruptcy Court on the allocation issue, because if true now, it was true at the time of the Rule 60(b) motion. Parties are bound by the positions they take in their briefs and at oral argument. *See Whitney Bros. Co. v. Sprafkin*, 3 F.3d 530, 534 n. 4 (1st Cir. 1993).

The third reason for the shift in approach on appeal is a change in the nature of the relief requested. Here,

for the first time, the IRS argues that the Bankruptcy Court should have deferred, or denied without prejudice, the motion for relief from that part of the 1/13/99 Sale Order which tentatively allocated the proceeds of sale pending the IRS's determination of the administrative tax liability. Thus, we have been asked to reverse and remand that aspect of that order with instructions that Rule 60(b) relief be deferred pending that determination.

We decline to take the change in approach suggested by the IRS, or to consider the new bases for relief or the additional facts raised on appeal, for several reasons. First, we need not consider arguments raised for the first time on appeal. *Noonan v. Rauh (In re Rauh)*, 119 F.3d 46, 51 (1st Cir.1997). Second, when, as in this instance, a lower court's order is unexplained, a reviewing court may affirm a correct result on "any independently sufficient grounds *made manifest by the record.*" *Hodgens* [*v. General Dynamics Corp.*], 144 F.3d [151]at 173 [(1st Cir.1998)] (emphasis supplied; internal citations omitted). In other words, this Panel's review should be limited to the record as it existed before the Bankruptcy Court. If an appeal is ripe, this Panel should not be influenced by what has occurred since then or by what might occur in the future. Third, in effect the Panel has been asked to entertain a new and updated Rule 60(b) motion. Doing so would entail a direct review by us of the underlying orders which are beyond our jurisdiction in this contest. Rule 60(b) exists to permit a trial court to reconsider its own orders. It is not a substitute for a timely filed appeal, and "cannot resurrect appellants' expired right to contest the merits of the underlying judgment, nor bring the judgment itself before us for review." *Rodriguez–Antu-*

*na v. Chase Manhattan Bank Corp.*, 871 F.2d 1, 2 (1st Cir.1989); *see also Bradshaw v. United States (In re Bradshaw)*, 283 B.R. 814, 818 n. 7 (1st Cir. BAP 2002) (to enlarge the appeal period under Fed. R. Bankr.P. 8002(b), a Rule 60(b) motion must be filed within ten days of the order from which relief is sought). Accordingly, we will not consider the IRS's revised request for Rule 60(b) relief.

BAP No. MB 00–094, pp. 10–14 (footnote omitted). The opinion continues, at a later point:

At the hearing on the settlement, the Bankruptcy court weighed the appropriate factors for approval of a compromise. Those factors include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. [*Jeffrey v.*] *Desmond*, 70 F.3d [183] at 185 [(1st Cir.1995)]. The Trustee outlined the history of disputes among the Trustee and Receiver (of which the bankruptcy judge, having overseen the bankruptcy cases for the previous six years, was well aware). The compromise, in addition to resolving the amount of the Receiver's superpriority lien, also settled many other issues, including the Receiver's claims against the bankruptcy estates, and the Receiver's claim to and control over the funds in escrow. Essentially, the compromise opened the way for the Trustee to distribute the sale proceeds to creditors of the bankruptcy estates.

We also note that the lien itself had already been allowed in 1995. The 1995

Lien Order, granting the superpriority lien, was issued pursuant to § 364, and was a final order. *See Bensten v. Grant (In re Gloria Mfg. Corp.)*, 65 B.R. 341 (E.D.Va.1985). Section 364 provides protection to lenders who finance trustees in bankruptcy cases. "Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed § 364 to provide 'incentives to the creditor to extend post-petition credit.'" *In re Florida West Gateway, Inc.*, 147 B.R. 817, 819 (Bankr.S.D.Fla.1992) (citations omitted). That protection to lenders is substantial. "[A] lender that extends credit in reliance on a financing order is entitled to the benefit of that order, even if it turns out to be legally or factually erroneous." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir.1990). Indeed, pursuant to § 364(e), the 1995 Lien Order could not have been challenged absent a stay pending appeal.

In apparent awareness of § 364(e), the IRS did not challenge the validity and enforceability of the lien for any reason, including the limitation in the 1995 Lien Order that it not extend beyond the Trustee's interest in the stock purchase agreement. Nor did the IRS challenge the absence of an actual assignment of the lien granted to MBL. Instead, the IRS grounded its request for relief on "new information" showing the unfairness of a compromise which allowed the Trustee to give the Receiver priority over the IRS in the distribution of the proceeds of sale which had been allocated to the bankruptcy estates.

According to the IRS, the lien agreement in the settlement had permitted the Receiver to recover funds which had been advanced to the Trustee to the [sic] acquire stock in AIM even though the Receiver had been allocated 100% of the proceeds of sale of the AIM assets. This was particularly irksome to the IRS because as the shareholder of the bankrupt corporations, the Receiver would have been the last party in interest in the bankruptcy case to receive a distribution. While these facts may have been news to the IRS, there is little doubt that they were known to others at the hearing on September 21, 1999.

Everyone else at that hearing was aware that the agreed upon amount of $550,000 was more than the liability acknowledged by the Trustee. They also knew that the superpriority lien would entitle the Receiver to be paid that amount ahead of every other creditor. Indeed, this enhancement of the Receiver's status caused the bankruptcy judge to insist that other allowed claims be paid immediately. This brings us to the heart of the problem. None of this was of concern to any party, including the IRS, when the settlement was approved because it was then understood by all that the $3.5 million dollars which had been allocated to the Trustee would be enough to pay allowed claims in full.

The real "new information" presented in the Rule 60(b) motion which by due diligence could not have been discovered at the time of the settlement hearing was that as of June 22, 2000, the IRS estimated its administrative tax claim for 1999 to be over $4 million. *See* Declaration of Revenue Agent, Joint Record on Appeal, Volume VI, pp.2011–2021. As a result, it is doubtful that the IRS's claim will be paid in full.

Despite this new information, the IRS has failed to meet its burden. No one, including the IRS, had an inkling of the magnitude of the IRS claim until well after the September 21, 1999 hearing. In fact, at the time the appellate briefs

were filed, the precise amount of the tax claim was unknown. Absent a showing that the Trustee's consent to the agreement resulted from fraud or collusion, the Bankruptcy Court was justified in denying reconsideration. As noted previously, the trustee's business judgment need not be "born of omniscience." *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d [1] at 9 [(1st Cir.1999)]. To rule otherwise would allow a compromise to be set aside whenever the outcome was other than as intended. This possibility would discourage parties from compromising disputes with trustees in bankruptcy cases.

### 3. Unfair Prejudice

The comprehensive settlement agreement resolved all disputes between the Trustee and Receiver, including the amount of the superpriority lien claim. It also enabled the Trustee to make distribution to the holders of allowed claims at the end of 1999. The Trustee and Receiver and all parties in interest in their respective estates who were bound by that agreement were justified in relying upon its approval by the Bankruptcy Court and the District Court. Setting it aside would have resulted in unfair prejudice to them. Absent a showing of fraud or collusion, or that the Trustee was less than straightforward in his presentation of the settlement, the Bankruptcy Court was justified in denying relief.

### CONCLUSIONS

The appeal of denial of reconsideration of the 12/30/99 Tax Cap Order is dismissed as moot.

There was no abuse of discretion in the Bankruptcy Court's denial of the request for reconsideration of the 1/13/99 Sale Order and the 9/21/99 Set-

tlement Order. Accordingly, the Bankruptcy Court's denial of the IRS's motion under Rule 60(b) for reconsideration of the 1/13/99 Sale Order and the 9/21/99 Settlement Order is AFFIRMED.

*Id.* at 21–25 (footnotes omitted).

### IV. Instructions in the Order of Remand and Consequences of Withdrawal of Reference

On the suggestion of Bankruptcy Judge Boroff before whom all relevant bankruptcy cases were pending, concurred in by Judge Weinshienk of the United States District Court for the District of Colorado, Chief Judge Young of the United States District Court for the District of Massachusetts ordered that the reference of all the bankruptcy cases be withdrawn and that all these cases be assigned to District Judge Keeton of the United States District Court for the District of Massachusetts, to whom the Receivership case from the District of Colorado had been assigned as Civil Action No. 02–11522–REK in the District of Massachusetts.

I (Judge Keeton) ordered all these cases consolidated, designating No. 02–11522–REK as the lead case. Thereafter, I ordered that oral argument in these fully briefed Appellate Proceedings, Civil Action No. 01–40180–REK and 02–40027–REK, be heard separately from all other matters consolidated in Civil Action No. 02–11522–REK. The oral argument was held on January 10, 2003.

If the order withdrawing the references had not been made, the order finally deciding the appeals to this district court of the bankruptcy judge's orders of August 3 and November 21, 2001, would have remanded to Bankruptcy Judge Boroff matters remaining for consideration before final disposition of any of the bankruptcy cases. In view of that withdrawal of the refer-

ences, however, my order of remand incident to deciding these appeals will be a remand to myself as the district judge presiding over the Consolidated Proceedings, Civil Action No. 02–11522–REK.

Thus, any instructions I include in the order of remand will be instructions to myself. Also, the consequences that the rulings I make in these Appellate Proceedings will have for issues and parties in the Consolidated Proceedings will appropriately be decided in the Consolidated Proceedings, Civil Action No. 02–11522–REK, if not decided and declared in these Appellate Proceedings as part of the instructions on remand, subject to review by a higher court.

With an exception noted immediately below, the review of my decisions by a higher court will not occur until I have ordered a final judgment in the Consolidated Proceedings, Civil Action No. 02–11522–REK, either for the entire Consolidated Proceedings or separately for some designated part if that turns out to be appropriate.

The exception is that one or more of the parties to these Appellate Proceedings now before me, or to the Consolidated Proceedings, may attempt to appeal or seek mandamus sooner, and may persuade the Court of Appeals for the First Circuit to take jurisdiction and order me to proceed in some different way. Even if such an attempt is made, however, under guidance of First Circuit precedent I must proceed reasonably promptly, unless otherwise directed by the Court of Appeals, in the ongoing Consolidated Proceedings, Civil Action No. 02–11522–REK.

## V. Positions of the Participants in These Appellate Proceedings

The Receiver asks that the District Court, in the disposition of these Appellate Proceedings, vacate the orders of August 3, 2001, and November 21, 2001.

The Internal Revenue Service (IRS) continues to be unwilling or unable to come to an unequivocal decision about what it wants this court to do. Instead, the IRS has filed a document (Docket No. 22, filed January 17, 2003), containing nine pages of text and, as Exhibit A, an annotated copy of the discussion draft the court placed before the attorneys at the time of oral argument. The IRS "Synopsis of Position" is as follows:

With respect to the "Positions of the Participants in These Appellate Proceedings" on page 10 of Exhibit A, counsel for the United States stated at the argument on January 10 that the position of the IRS is not correctly described and the Court gave the United States until January 16, 2003, to submit a synopsis of its position.

If focusing narrowly on these appeals, the United States' position is succinctly capsulized as "The United States proposes that the Court affirm the orders on appeal in all respects." Since counsel for the United States addressed the merits of both appeals at the argument, and also addressed the Receiver's contention of mootness, the United States does not believe that the Court wants it to reargue those points here.

Based on the nature of the Court's draft synopsis of the government's position, as well as further comments made by the Court at the argument, however, we believe that what the Court would really like is a synopsis of the government's position with respect to the interrelationship between the tax assessments against the receivership and bankruptcy estates.

While we will attempt to clarify the government's position in respect to the interrelationship between the tax assessments in a moment, we first note that the United States maintains that issues

regarding the tax assessments—particularly the one against the receivership entity—should have no bearing whatsoever on the disposition of these appeals. These appeals do not address the merits or propriety of the tax assessment against the bankruptcy estate, and only tangentially implicate that assessment insofar as the government's status in these appeals is an administrative claimant in one of the three bankruptcy cases (*Indian Motocycle Company, Inc.*). The tax assessment against the receivership estate is not even indirectly related to the issues in these appeals. The appeal from the 8/3/01 decision and order concerns (1) whether a $1.2 million escrow fund was property of the bankruptcy estate subject to a turn-over order under 11 U.S.C. § 542 and § 543; (2) whether the bankruptcy court had *in personam* jurisdiction over the Receiver where the Receiver voluntarily interjected itself in the bankruptcy case as a claimant; (3) whether the Receiver may be made to account for the disposition of interest it received under an order that was then reversed on appeal, and (4) whether the Bankruptcy Court properly enjoined the Receiver from using another court's process to take discovery in respect to claims filed in the bankruptcy estate that are, by statute, within the "exclusive jurisdiction" of the Bankruptcy Court (including the determination of the administrative tax claim and the determination of the claims that the Receiver filed to collect debts allegedly owed by the debtors by a distribution from the estate under 11 U.S.C. § 726). The appeal from the 11/21/02 order concerns whether the Bankruptcy Court could act to enforce the automatic stay, and to protect its "exclusive jurisdiction" conferred by statute over property of the bankruptcy estate, after having previously ruled that certain funds were indeed property of the bankruptcy estate.

Exhibit A suggests that the Court views the IRS as (1) "unwilling or unable to come to a decision about what it wants this court to do" as (2) "propos[ing] irreconcilable possibilities," and as (3) "argu[ing] it is entitled to delay until it can make up its institutional mind" and that the "court is powerless to act in any way other than what the IRS manifests is its choice." Presumably this refers to the fact that the IRS has reallocated income for tax purposes to one of the bankruptcy debtors to the receivership entity but refuses to agree to reduce the receivership entity's income concomitantly. First, the IRS came to a decision as to which estate should be deemed to have realized what amount of income from the joint sale when it made its assessment and has never backtracked from that decision or indicated any trouble deciding whether to assert its claims. The IRS assessed tax against Company based on a reallocation of the income from the joint assets sale. The IRS has been equally committed to refusing to allow the Receiver to change horses and thereby claim that IMMI did not realize some of the income it reported, given that the Receiver and the Trustee refuse to waive defenses to the reallocation to Company. It is necessary for the government to assert its preferred position, without giving up its alternative position, in order to prevent a whipsaw against the government. The courts have consistently ruled that the IRS may take alternative inconsistent positions in order to protect the public fisc from inconsistent results in which neither entity ends up taxed. The case law is presented in the U.S. Response to Receiver's "Motion to Strike One Government

Claim For Taxes" filed on or about October 31, 2002.

Second, the government is not "proposing irreconcilable possibilities." We are simply proposing that the taxes of the bankruptcy estate be determined *first*, after which we have agreed that an adjustment *may* be necessary to the government's position in the receivership case. There is nothing irreconcilable about putting the horse before the cart.

Third, the United States is not "argu[ing] it is entitled to delay until it can make up its institutional mind" or that the "court is powerless to act in any way other than what the IRS manifests is its choice." As just explained, the IRS made up its mind when it made its assessment. The Court has the power to determine that it erred in reallocating income. If the Court determines that the IRS did err in that respect, then obviously the Receiver is not entitled to suddenly claim that IMMI's tax liability should be wiped out because, notwithstanding the Court's decision, the IRS *correctly* reallocated. On the other hand, if the Court determines that the IRS was correct in reallocating part of the income from the joint sale from the receivership estate to the bankruptcy estate, then the United States has repeatedly stated that it will (assuming the Trustee does not succeed in having such a determination by this Court reversed on appeal) *voluntarily* remove a corresponding portion of the income from the receivership estate and abate the tax assessment against IMMI accordingly.

The dispute over inconsistent assessments will hopefully soon be moot as the Trustee has just filed a motion to approve a settlement agreement between the Trustee and the United States (subject first to the approval of a duly authorized delegate of the Attorney General),

under which the United States will waive the reallocation entirely and leave the allocation of the sale proceeds, as between the receivership and bankruptcy estates, exactly as agreed to by the Trustee and Receiver in 1999. If the settlement between the Trustee and the United States is approved, then the only tax issues that will remain for judicial resolution will be those asserted by the IRS with respect to the receivership entity, IMMI. Those issues have nothing whatsoever to do with any reallocation and nothing whatsoever to do with any issue in the bankruptcy cases whatsoever. (See UNITED STATES' SUBMISSION WITH RESPECT TO TAX LIABILITY OF RECEIVERSHIP ESTATE, filed January 15, 2003). At the same time, until and unless the settlement agreement is accepted on behalf of the Attorney General and the Trustee's entry into it is thereafter approved by the Court, the United States reserves the right to maintain that the tax assessment against the bankruptcy estate of Indian Motocycle Co. is correct (including the reallocation).

Docket No. 22 at 2–5 (footnote omitted).

The United States Trustee proposes that the United States District Court deny the Receiver's motion to dismiss and to vacate the Orders entered by the Bankruptcy Court on August 3, 2001, and on November 21, 2001, and affirm and uphold those Orders of the Bankruptcy Court that are the subject of these Appellate Proceedings.

The Trustee in Bankruptcy proposes that the District Court, in the disposition of these Appellate Proceedings, deny the Receiver's motion to dismiss and to vacate the orders of August 3, 2001, and November 21, 2001, and affirm in all respects the decisions and orders of the Bankruptcy Court that are the subject of the Receiv-

er's appeals in these Appellate Proceedings.

## VI. Merits of These Appeals

### A. A Jurisdictional Issue

An issue of threshold concern to this court in its consideration of disposition of these Appellate Proceedings is whether the court has jurisdiction to consider any appeal other than that of Sterling Consulting Corp., Receiver. The record before this court contains no timely filed notice of appeal from any person or entity other than Sterling Consulting Corp., Receiver. The record does not show that either the United States government or the IRS filed a timely notice of appeal from any order or ruling of the Bankruptcy Court that is now under review by this court in these Appellate Proceedings. Of course, the United States government and the IRS are appellees, defending the orders of Judge Boroff, and may be heard in that capacity.

### B. Standard of Review

■ In an appeal from a judgment of a bankruptcy court, the district court applies the same standards of review normally applied by an appellate court. *See Casco Northern Bank, N.A. v. DN Associates,* 3 F.3d 512, 515 (1st Cir.1993). The court will review the Bankruptcy Court's findings of fact under a clearly erroneous standard. As stated by a Judge from this District, "[r]eviewing courts apply a clearly erroneous standard because, as the trier of fact, the Bankruptcy Court is 'on the front line' and in the best position to judge the credibility of the witnesses and the evidence." *Rutanen v. Baylis,* 275 B.R. 145, 152 (D.Mass.2002) (Gorton, D.J.) (internal citation omitted).

■ The court will review de novo any rulings of law. *See LaRoche v. Amoskeag Bank,* 969 F.2d 1299, 1301 (1st Cir.1992). The court will also review de novo mixed questions involving application of a legal standard to a set of facts. *See Whitehouse v. LaRoche,* 277 F.3d 568, 573 (1st Cir. 2002).

### C. The August 3 Order

#### 1. Identification of the Issues Before Bankruptcy Judge Boroff

Bankruptcy Judge Boroff's Memorandum of Decision of August 3, 2001, begins with a statement of the issues presented to him for decision:

Before this Court are two motions, which while not strictly related, share a common fact pattern and common issues of law and concern. The first is an *"Ex Parte* Emergency Motion of the United States to Enforce the Judgment of the B.A.P. and the Automatic Stay, and For Related Relief" (the "Government Motion"). By Order of May 18, 2001, supported by a Memorandum of Decision of the same date, this Court denied the *ex parte* relief sought by the United States. Now before this Court are the merits of the Government Motion. The United States asks this Court to (i) order Sterling Consulting Corporation, the appointed Receiver of Indian Motorcycle Manufacturing, Inc. in *Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc.,* Civ. Action 95–Z777 (D.Colo.)(the "Receivership Proceeding"), to return $1.2 Million Dollars distributed to the Receiver as escrow agent under this Court's order of December 30, 1999, together with interest accrued thereon; (ii) find and rule that the Receiver has violated the automatic stay under 11 U.S.C. §§ 362(a)(3) and(a)(6) on account of its refusal to return such funds to date and on account of its allegedly ongoing attempts in the Receivership Proceeding to secure discovery from the United States with respect to an alleged administrative tax obligation

of these bankruptcy estates; and (iii) award damages to the United States on account of those violations.

Also before the Court is a "Motion to Change Venue" (the "Venue Motion") filed by the Receiver at the urging of the Magistrate Judge assigned to the Receivership Proceeding in Colorado (the "Magistrate"). The Receiver asks that, pursuant to 28 U.S.C. § 1412, this Court transfer the venue of these bankruptcy cases, or alternatively the contested matter relating to any administrative claim made by the United States against the bankruptcy estates, to the United States District Court for the District of Colorado (the "District Court") where the reference thereto can be withdrawn in favor of the District Court. 266 B.R. 243 at 247–48.

### 2. Ruling on the Merits of the Venue Motion

I conclude that it would serve no purpose now for this court in these Appellate Proceedings to purport to set aside Bankruptcy Judge Boroff's ruling on the Venue Motion. The Colorado Receivership has been transferred to the United States District Court for the District of Massachusetts and is pending before me, in Civil Action No. 02–11522–REK, as the judge to whom that transferred case has been assigned. In these circumstances, I affirm this part of Bankruptcy Judge Boroff's Order of August 3, 2001.

### 3. Disposition of Other Matters

#### a. Return of the $1,200,000.00

The first of the other matters before him on August 3 was stated by Bankruptcy Judge Boroff in the following way:

The United States asks this Court to (i) order Sterling Consulting Corporation, the appointed Receiver of Indian Motorcycle Manufacturing, Inc., in *Eller In-*

*dustries, Inc. v. Indian Motorcycle Manufacturing, Inc.*, Civ. Action 95–Z777 (D.Colo.) (the "Receivership Proceeding"), to return $1.2 Million Dollars distributed to the Receiver as escrow agent under this Court's order of December 30, 1999, together with interest accrued thereon . . . .

*Id.* at 247.

In his recitation of the "background and travel of the case," Bankruptcy Judge Boroff observed:

Attempting to accommodate the concerns of the United States (but concededly over its objection), this Court, on December 30, 1999, estimated the claim of the United States at $1.2 million for the purposes of distribution, pursuant to 11 U.S.C. §§ 502(c) and granted the Trustee leave, inter alia, to (i) transfer $1.2 million to the Receiver to be held in escrow subject to the District Court administrative tax determination, and (ii) pay the remainder of the $3.5 million allocation to bankruptcy estate creditors.

*Id.* at 251–52.

Later in his opinion, Bankruptcy Judge Boroff made a decision about the $1,200,000.00 he ordered transferred to the custody of the Receiver to be held in escrow. He decided that this $1,200,000.00 was property of the bankruptcy estate, explaining this decision in the following way:

In his statements as reported by the parties, or in open court, or in his letter to this Court, the Magistrate has stated or implied that the escrowed funds are in the "registry" of the District Court, that he (and the District Court Judge) are the true escrowees and that the funds are in *custodia legis* of the District Court. None of these statements are orders of the District Court. State-

ments made by a judge in open court, ruminating on the dispute before the court is not an order or judgment. *See BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.,* 132 F.3d 824, 829 (1st Cir.1997); *Logue v. Dore,* 103 F.3d 1040, 1047 (1st Cir.1997). However, to the extent that this Court correctly understands those views and the Magistrate continues to adhere to them, this Court respectfully disagrees. The funds are not under the control of the clerk of the District Court; they are in a bank account held by the Receiver. Neither the Magistrate nor the District Judge is the escrowee and holder of the subject property of the bankruptcy estate. The Receiver may be a court functionary, but it is neither a Magistrate nor a District Judge and it does not have the judicial immunity of either. And, having started out as bankruptcy estate property since September 21, 1999 and having been sent *in escrow* to the Receiver for a stated but failed purpose, the subject funds are simply not receivership property. They are property subject to this Court's exclusive jurisdiction. *See* 28 U.S.C. §§ 1334(a).

*Id.* at 261 (footnote omitted).

Having so ruled, Bankruptcy Judge Boroff responded to part (i) of the government's motion with an order that the $1,200,000.00 be returned to the Trustee in Bankruptcy but that "it could not be said, until and unless it fails to comply with this Court's order issued today [August 3, 2001] to have imposed wrongful control over the escrowed funds." *Id.* at 262. He then ruled that the right to the interest that had accrued was in dispute, that he would not decide that dispute, and that instead he would "simply order the Receiver to remit to the Trustee the $1.2 Million Dollars, plus interest accrued on and after

June 7, 2001" and "order the Receiver to also file an accounting." *Id.* at 262.

### b. Violation of the Automatic Stay

Bankruptcy Judge Boroff answered the second aspect of the government's motion with a finding of violation of the automatic stay and an order that the Receiver "cease these activities forthwith." *Id.* at 263.

### c. Litigation Expenses and Monetary Damages

Bankruptcy Judge Boroff answered the third aspect of the government's motion with a decision that "the United States has not provided this court with the specifics necessary to quantify" the litigation expenses it claimed, that "not all of the discovery in the District Court (in Colorado)" that "it sought to quash related to the bankruptcy claims," and that it was "the obligation of the United States to better identify its damages on account of the automatic stay violation alleged." *Id.* at 263–64. For these reasons, Bankruptcy Judge Boroff denied the claim for monetary damages for violation of the automatic stay. *Id.* at 264.

### d. Decision on the Merits of Appeal from Order of August 3, 2001

On this appeal from Bankruptcy Judge Boroff's Order of August 3, 2001, I conclude that the findings recited in his Memorandum of Decision are well supported by the record before him, and that his conclusions of law are correct. Under the applicable standard of review I must affirm the Order of August 3, 2001.

■ My decision includes, specifically, an affirmation of Judge Boroff's finding that the disputed $1,200,000.00 belongs to the bankruptcy estate and not to the receivership.

**D. The Order of November 21, 2001**

I hold, as a matter of law, as did Bankruptcy Judge Boroff in his Order of November 21, 2001:

█ (1) That the Trustee has and had no authority to enter into any binding settlement of disputes that have an impact on the rights of interested persons in the property of the Bankruptcy Estates, absent approval of the Bankruptcy Court.

█ (2) That Bankruptcy Judge Boroff had jurisdiction (but I need not and do not hold that he had "exclusive" jurisdiction) over

(i) the determination of the administrative taxes of the Bankruptcy Estates; (ii) the determination of any claims (secured or unsecured) by the Receiver against the Bankruptcy Estates; and (iii) the funds a located [sic] to the Bankruptcy Estates by virtue of the settlement approved by this Court on September 21, 1999 (the "1999 Settlement").

*In re Indian Motocycle Company, Inc., Debtor,* 2001 WL 1673643 (Bankr.D.Mass., November 21, 2001).

█ (3) That the Receiver violated 11 U.S.C. § 362(a)(3) by seeking to use the process of the U.S. District Court for the District of Colorado to attack collaterally Judge Boroff's Order of August 3, 2001.

I need not and do not hold, as did Bankruptcy Judge Boroff, that it was proper for him to enjoin the Receiver from prosecuting any motions or complaints filed in the United States District Court for the District of Colorado.

**E. Findings Regarding the Proposed Settlement Between the Trustee and the United States**

Apparently with the purpose of demonstrating its asserted good faith and effort to cooperate with the court's purpose of proceeding promptly to disposition of these Appellate Proceedings, the IRS in its most recent filing says:

> The dispute over inconsistent assessments will hopefully soon be moot as the Trustee has just filed a motion to approve a settlement agreement between the Trustee and the United States (subject first to the approval of a duly authorized delegate of the Attorney General) . . . .

Docket No. 22 at p. 5.

Rather than showing cooperation with the court in reasonably prompt disposition of these Appellate Proceedings, I find this to be evidence that the IRS is continuing its efforts to delay proceedings and impose heavy burdens on anyone impeding its efforts. The complexity of the settlement agreement indicates that the parties have not reached this accord suddenly, yet the agreement was produced precisely when the process of approving the agreement will most likely delay other proceedings. I find that it is most unlikely that the Attorney General or any delegate will approve the proposed settlement soon enough not to delay disposition of both of these Appellate Proceedings and of the Consolidated Proceedings. I find that this is another IRS tactic of delay, delay, delay. I find that it is another step of continuing to argue that the IRS is entitled to maintain inconsistent positions as long as it chooses to do so, even after nine years to investigate. I find that this is another step in the strategy of maintaining that neither this nor any higher court can force the IRS to make a decision before the IRS chooses to do so. I find that this is another bit of evidence that the IRS is pursuing its strategy of delay for the purpose of frustrating this court's or any other court's or party's efforts to bring to fair and final resolution the controversies that the IRS proposes to

hold open indefinitely, until it has made up its institutional mind.

### ORDER IN DISPOSITION of All Appeals in Civil Actions No. 01–40180–REK and No. 02–40027–REK

(1) The receiver's motion to dismiss is DENIED.

(2) The Bankruptcy Court's Orders of August 3, and November 21, 2001, are AFFIRMED except as modified by paragraph (5)S(8) below.

(3) The request of the United States government and the IRS to stay disposition of these Appellate Proceedings is DENIED because of the failure of the United States government and the IRS to show on the record any good cause for the proposed stay.

(4) The court finds that the IRS has willfully engaged in pressing in these proceedings arguments obviously without merit, doing so for the purpose of causing delay and thereby imposing economic and emotional stress in order to harass other parties who opposed contentions of the IRS. The court finds that the introduction of a proposed settlement agreement between the Trustee and the United States is a further delay tactic.

(5) I need not and do not hold, as did Bankruptcy Judge Boroff, that it was proper for him to enjoin the Receiver from prosecuting any motions or complaints filed in the United States District Court for the District of Colorado.

(6) As a sanction for the needless and inappropriate burdens the conduct of the IRS has imposed on other parties and entities having an interest in the outcome of these Appellate Proceedings, the court hereby formally declares that this conduct was unacceptable and inappropriate.

(7) The court REMANDS WITH INSTRUCTIONS to the judge presiding over the Consolidated Proceedings, Civil Action No. 02–11522–REK, to invite motions of the parties and consider whether any further sanction is appropriate, including, as a sanction, an order limiting the maximum the IRS can recover against any person or entity having an interest in the Consolidated Proceedings.

(8) If the IRS fails to decide and notify the parties and the court, within a reasonable time from this date, against which person, persons, entity, or entities it will make claims and in what amount or amounts, the court in Civil Action No. 02–11522–REK may consider submissions and arguments of all interested parties as to what, if any, orders limiting IRS options the court should make in the Consolidated Proceedings, Civil Action No. 02–11522–REK.

(9) All parties to these Appellate Proceedings will bear their own costs and attorneys' fees.