In re **INDIAN MOTOCYCLE COMPANY, INC.; Indian Motocycle Apparel and Accessories Company, Inc.; Indian Motocycle Manufacturing Company, Inc.; The Receivership Estate of Indian Motocycle Manufacturing, Inc., Debtors.**

**Sterling Consulting Corporation, Receiver, Plaintiff, Appellee,**

v.

**Internal Revenue Service, Defendant, Appellant,**

**Stephen M. Rodolakis, Trustee, Defendant.**

**Sterling Consulting Corporation, Receiver, Plaintiff, Appellee,**

v.

**United States of America, Claimant, Appellant,**

**Stephen M. Rodolakis, Trustee;
Michael Mandelman,
Defendants.**

Nos. 03–1809, 05–1474, 03–2210.

United States Court of Appeals,
First Circuit.

Heard May 3, 2006.
Decided June 23, 2006.

———

Peter Sklarew, Tax Division, Department of Justice, with whom Eileen J. O'Connor, Assistant Attorney General, Thomas J. Clark and Kenneth W. Rosenberg, Attorneys, Tax Division, Department of Justice, and Michael J. Sullivan, United States Attorney, were on brief for appellant.

Before BOUDIN, Chief Judge,
COFFIN, Senior Circuit Judge, and
SELYA, Circuit Judge.

BOUDIN, Chief Judge.

Before us are appeals by the United States on a single narrow issue—a sanction determination—made in a complex, long-enduring matter arising in the Bankruptcy Court for the District of Massachusetts. The bankruptcy encompassed three related companies, each using the phrase "Indian Motocycle" in its name. The matter has been pending since the early 1990s and now appears to be resolved save for the present appeals.

The bankruptcy litigation was complicated by the fact that an unrelated corporation, whose name also included the phrase "Indian Motocycle," entered receivership in the federal district court in Colorado. Thereafter, the Colorado receiver and the Massachusetts bankruptcy trustee litigated against each other, primarily over rights to the Indian Motocycle trademark. A 1999 settlement between them led in turn to disputes with the Internal Revenue Service ("IRS") as to the respective taxes due from the receivership and bankruptcy estates following the sale of assets.

A central issue in the dispute with the IRS was the proper allocation of income as between the two sets of parties-the receivership and the bankruptcy estates. To assure a consistent outcome, the receivership case was transferred to the District of Massachusetts, the order of reference of the bankruptcy proceedings to the bankruptcy court was withdrawn, and matters in both the bankruptcy proceedings and the receivership were assigned to the same

Massachusetts district judge, who assumed direct supervision of all matters.

Thereafter, the district court took issue with the IRS's maintenance of different and inconsistent tax assessments asserted against the respective parties—an approach that the IRS claimed to be necessary to protect its own interests until a final adjudication as to the proper allocation permitted a final set of assessments adding up to no more than 100 percent of the total taxes due on the asset sale.

The disagreement culminated in a decision by the district court dated January 29, 2003. *In re Indian Motocycle Mfg. Co.,* 288 B.R. 617 (2003). In the course of that decision (covering a host of other, unrelated matters), the district court addressed not only the inconsistent assessments made by the IRS but also the then-recent revelation by government counsel that the IRS and the trustee were going to seek approval by the Attorney General of a settlement between the IRS and the trustee, mooting further litigation between them.

In the January 29 decision, the district court declared that the proposed settlement was "evidence that the IRS is continuing its efforts to delay proceedings and impose heavy burdens on anyone impeding its efforts"; that any prospect of rapid approval by the Attorney General was unlikely; that this was "another step of continuing to argue that the IRS is entitled to maintain inconsistent positions" indefinite-ly; and that this further evidenced an IRS "strategy of delay for the purpose of frustrating" judicial efforts to bring the controversies to a resolution. *In re Indian Motocycle,* 288 B.R. at 634.

In the ordering paragraph of the decision, the court found that the IRS had "willfully" engaged in presenting meritless arguments for purposes of delay and that the "proposed settlement agreement" was "a further delay tactic." *In re Indian Motocycle,* 288 B.R. at 635. As "a sanction" the court "formally declare[d] that this conduct was unacceptable and inappropriate." *Id.* The ordering language further provided that other parties could move for further appropriate sanctions. *Id.* Rehearing was denied and the United States appealed from the order in question.[1]

While the appeal was pending, the district court on June 6, 2003, considered and rejected the receiver's request that, in light of the allegedly improper inconsistent assessments, the IRS should be barred from seeking certain amounts claimed due. *In re Receivership Estate of Indian Motorcycle Mfg., Inc.,* 299 B.R. 8, 23 (2003). The district court rejected the request on the ground that it would violate the Anti-Injunction Act, 26 U.S.C. § 7421(a) (2000). *Id.* at 24. In the same order, the district court seemed to back half a step away from its earlier critique of inconsistent assessments but did not withdraw the sanction.[2] The government appealed again.

1. Because the order in question was directed against the appellant, we need not decide whether this case presents the "idiosyncratic circumstances" that might permit an attorney to appeal from a sanction imposed on a client or vice versa. *DCPB, Inc. v. City of Lebanon,* 957 F.2d 913, 919 (1st Cir.1992) (citing *Marshak v. Tonetti,* 813 F.2d 13, 21 (1st Cir.1987)).

2. The district court noted the receiver's position that inconsistent assessments by the IRS were automatically impermissible. After quoting the IRS's explanation as to why its stance was necessary to "protect the government from a 'whipsaw,'" the court noted that "[n]umerous courts have permitted such whipsaw assessments. *See, e.g., Sherbo v. C.I.R.,* 255 F.3d 650, 655 (8th Cir.2001); *Fayeghi v. C.I.R.,* 211 F.3d 504, 508 (9th Cir. 2000)." *In re Indian Motocycle,* 299 B.R. at 24.

On February 15, 2005, this court, while retaining appellate jurisdiction, issued an order of limited remand asking the district court to clarify its position as to whether the June 6, 2003, decision reflected a change in the court's view as to the IRS's conduct and the sanction imposed. On February 23, 2005, the district court issued a decision pertinently stating as follows:

> In my Memorandum and Order of January 29, 2003, I formally declared that the conduct of the IRS was unacceptable and inappropriate (¶ 6), and invited motions of the parties regarding sanctions (¶¶ 7,8). My verbal admonishment of the IRS for "unacceptable and inappropriate" conduct is still "in effect" in the sense that it remains on the record of this closed case. I did not change my conclusion with regard to the conduct of the IRS in any later rulings, and I do not change that conclusion now. But I do not intend to order any further sanction or consequence from this verbal admonishment. My invitation to the other parties to make motions regarding the appropriate sanctions for the conduct of the IRS is no longer "in effect," that is, still available, because the opportunity for any party to submit an appropriately-supported motion is now closed.

Before us now are the appeals by the United States of all three orders, in substance attacking the sanction and the underlying findings. None of the three orders concluded the bankruptcy proceeding, but in bankruptcy "the word 'final' [in 28 U.S.C. § 158(a)] has a somewhat specialized meaning" and includes "an order which disposes of a 'discreet dispute within a larger case.'" *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 558 (1st Cir.1986)(quoting *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir. 1985)).

In all events, it appears that since the above described orders of the district court, the settlement between the IRS and the trustee has been approved by the Attorney General and by the district court, and a final judgment has been entered in all three bankruptcy cases. The receiver's objections have been resolved by settlement and his appeal has been dismissed. Thus, the proceedings in the district court are at an end, eliminating any concerns about finality.

The more interesting question is whether the sanction order is reviewable at all. The receiver has submitted a letter questioning whether the order is reviewable in light of *In re Williams*, 156 F.3d 86 (1st Cir.1998). The government has responded by distinguishing that decision and asserting that the IRS is an aggrieved party entitled to seek review. Any concern as to Article III standing or mootness would be one that we would have to address on our own motion. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 73, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997).

*In re Williams* is easily distinguished. In that case, we held—in disagreement with several other circuits—that mere statements critical of attorneys, made by the judge in the course of litigation, were not themselves orders capable of being reviewed. The objection to review in *Williams* (*see* 156 F.3d at 90) was based on the distinction between an order and a finding, and on the principle that courts review findings only so far as they do underpin orders. *E.g.*, *Black v. Cutter Labs.*, 351 U.S. 292, 297, 76 S.Ct. 824, 100 L.Ed. 1188 (1956).

In the present case, an express sanction order exists and, unless the order is otherwise unreviewable or the appeals are moot, the adverse findings are the basis for, and clearly reviewable in the course of reviewing, the sanction order. The formal—al-

beit important—concern that animated *In re Williams* is not present in this case. That decision itself noted that "[w]ords alone may suffice if they are expressly identified as a reprimand." *Id.* at 92; *see also Young v. City of Providence*, 404 F.3d 33, 38 (1st Cir.2005) (Rule 11 determination).

Article III standing or mootness objections are a different matter. Ordinarily, a person who is the subject of an adverse order of court clearly has standing to appeal it, unless later events deprive it of any meaning. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Still, this case is peculiar: the original sanction order condemned the IRS and invited motions for further relief, but none has been granted and the case is now over. So the question might be asked whether any "injury" currently exists or whether the threat of injury has been mooted by the settlement.

Article III standing is said to require that the plaintiff have suffered or is threatened by injury caused by the defendant that a court is capable of redressing. Chemerinsky, *Federal Jurisdiction* § 2.3, at 59–60 (4th ed.2003); *Northeastern Fla. Contractors v. Jacksonville*, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). The summary itself omits recognized qualifications,[3] and the three listed requirements conceal ambiguities. A major one, central in this case, is just what is meant by "injury" for Article III purposes.

There is no shorthand answer: different contexts raise different problems, issues of degree are presented, and the requirement itself has different aspects (*e.g.*, whether the interest asserted to be damaged is "cognizable" and whether it is "speculative"). *See* Chemerinsky, *supra*, § 2.3.2, at 61–64, 68–74. The animating concern is that courts decide only concrete disputes between parties with an incentive to litigate them properly. *See Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

On appeal, the government has referred briefly to two different interests that it says are impaired or threatened by the sanctions order. One is the IRS's reputation; the other is the risk that the findings of misconduct could be used against it as part of an "unclean hands" defense in related litigation in the federal court in Denver where the IRS remains involved and where (we are told) disappointed claimants may offer such a defense. The receiver has specifically waived any right to assert such a defense.

Unembellished by specifics, the former interest may be too general to suffice. Reputational interests can be cognizable; that is what defamation and expungement of record cases are about.[4] But merely to refer to reputation does not in this case denote a concrete threat, as it might if a lawyer were sanctioned and bar discipline was in prospect. *Obert v. Republic W.*

---

3. Merely as examples, the plaintiff may be someone who is not injured but is closely related (*e.g.*, a trustee or parent), *see, e.g., Singleton v. Wulff*, 428 U.S. 106, 117, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), or merely deemed appropriate (*e.g.*, in first amendment overbreadth cases), *see, e.g., Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); and some *interest* may suffice even without present or even imminent injury (*e.g.*, in declaratory judgment cases), *see, e.g., Aetna Life Ins.*

*Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

4. Two decisions in other circuits, upholding standing to seek review of orders refusing expungement of records, are illustrative, *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975) (FBI records); *Paton v. La Prade*, 524 F.2d 862 (3rd Cir.1975) (grand jury determinations). On defamation, *see* Prosser & Keeton, *The Law of Torts* § 111, at 771.

*Ins. Co.*, 398 F.3d 138 (1st Cir.2005). As for any collateral estoppel effect in the Denver phase of the litigation, we have been unable to confirm from the facts supplied that the threat there is a real one.

Perhaps, where the conduct of a party (or counsel) is expressly condemned as improper by a formal sanction order, that ought to be enough for review. At least by implication, however, our own case law may be more demanding even in the presence of a formal order.[5] But where a formal sanction order has been entered, we hold that it is sufficient for standing to appeal, and enough to refute any charge of mootness, that the sanction order continues to have a potential real-world impact upon the sanctioned party. That test is met in this case.

The conduct condemned by the district court is not some idiosyncratic event; we know (from case law) that the IRS regularly uses protective inconsistent assessments and (from experience) that it settles cases *in medias res,* especially when it fears an adverse decision. Nor was the district court making a passing negative comment; it formally declared in a sanction order that the regular practice of the IRS, an institutional litigant, amounts to willful misconduct that invites penalties.

The IRS has a self-evident concrete interest in maintaining practices of this kind. The district court's sanction order is a disincentive for the IRS to repeat its conduct in the same or any sister court; if nothing else, the IRS would have to consider the peril to which doing so would expose its own lawyers. We hold that foreseeable practical consequences give the IRS adequate and justifiable incentive to litigate these appeals and that the government has Article III standing to proceed.

Turning now to the merits of the appeal, the IRS's protective taking of inconsistent positions as to allocation is not even arguably improper, any more than the assertion of "inconsistent" claims of deliberate wrongdoing and negligence in a complaint. Until there is a definitive resolution binding all parties, the IRS can be subject to a whipsaw if it seeks less than the plausible maximum against each party. The case law amply explains the rationale for the practice and tolerates its use. See note 1, above.

The other specific concern of the district court—that the IRS-trustee settlement was produced late in the day without any assurance that it could be timely completed—might have force if the proposal prevented the district court from proceeding in the case as it might do without the settlement. Whether the government formally sought a delay is unclear, but the district court had no obligation to delay proceedings even if requests were made.

Ordinary practices can, in particular circumstances, be ill-motivated or misused, but nothing in the district court's decision shows either was true in this case. The case might well be different if the court had identified other aggravated circumstances. The district court's frustration with this endless and entangled litigation is more than understandable; but we conclude that the findings of deliberate misconduct that underpin the sanctions order are unsupported and now disapprove the

---

5. *Obert,* the closest case in point, did not expressly so hold and involved a mootness rather than an "injury" claim; but it did rely on the concrete threat of long term consequences to counsel in the context of the case. A number of other circuits come closer to *per se* rules affording standing where lawyer reputation is impugned. *See Butler v. Biocore Med. Techs., Inc.,* 348 F.3d 1163, 1167–68 (10th Cir.2003) (describing case law in various circuits).

findings, *vacate* the sanctions order, and bring the controversy to an end.

*It is so ordered.*