In re The **RECEIVERSHIP ESTATE OF INDIAN MOTORCYCLE MANU- FACTURING, INC. a New Mexico Corporation.**

**No. CIV.A.02–11522–REK.**

United States District Court, D. Massachusetts.

Aug. 7, 2003.

John M. Tanner, Denver, CO, for Plaintiff.

Paul D. Moore, Duane Morris LLP, Boston, MA, Todd P. Blakely, Sheridan, Ross, PC, Denver, CO, Michael Mandelman, Pro Se, Milwaukee, WI, Kurt W. Hague, Goulston & Storrs, PC, Richard W. Renehan, Rudolph F. Pierce, Boston, MA, for Defendants.

Noreene Stehlik, Peter Sklarew, Thomas P. Cole, Department of Justice, Washington, DC, Richard T. King, Office of the US Trustee, Worcester, MA, for Claimant.

## MEMORANDUM IN EXPLANATION AND PRACTICE AND PROCEDURE ORDER

### Order No. 6

KEETON, District Judge.

A **Case Management Conference** (CMC) in these Consolidated Proceedings was held on July 31, 2003. Rulings then made are recited below.

*Practice and Procedure Order No. 6 supplements and does not supercede Practice and Procedure Orders Nos. 1, 2, 3, 4, and 5.*

### I. Pending Motions

(1) Receiver's Motion for Order Approving Payment of Professionals (Docket No. 24, filed October 18, 2002) was denied.

(2) Motion of United States (1) To Strike [DI# 54] Receiver's Effort to Circumvent Failure to Comply with Court Orders and Deadlines by Purporting to

"Notice" Other Parties' Motions and (2) To Enter Default–Dismissal of Receiver's Motion to Reform Mandelman Contract and Recover Levied Funds (Docket No. 58, filed February 11, 2003) was denied.

(3) Motion of United States to Preserve Certain Important Pre–Trial Rights if the Court Allows the Receiver's Reformation/Wrongful–Levy Motion to Go Forward (Docket No. 61, filed February 11, 2003) was denied as prematurely presented.

(4) Motion of Michael Mandelman (1) To Strike [DI# 54] Receiver's Effort to Circumvent Failure to Comply with Court Orders and Deadlines by Purporting to "Notice" Other Parties' Motions and (2) To Enter Default–Dismissal of Receiver's Motion to Reform Mandelman Contract and Recover Levied Funds (Docket No. 73, filed February 20, 2003) was denied.

(5) Motion of Michael Mandelman to Preserve Certain Important Pre–Trial Rights if the Court Allows the Receiver's Reformation/Wrongful–Levy Motion to Go Forward (Docket No. 75, filed February 20, 2003) was denied as prematurely presented.

(6) U.S. Motion (1) To Strike That Part of DI# 66 Which Seeks a Declaratory Judgment Regarding Sterling's Liability Under 31 U.S.C. § 3713, and (2) to Dismiss Remainder (Raising Issues of Transferee Liability) for Lack of Ripeness (Docket No. 86, filed March 7, 2003) was denied.

(7) United States' Motion to Strike Mr. Tanner's Fabrication (in DI # 79) Designed to Manufacture Yet Another Allegation of "Misconduct" Against Government Counsel and Request that Court Admonish Mr. Tanner to Cease the Incivility (Docket No. 98, filed March 13, 2003) was denied.

(8) Motion by Sterling Consulting for Order Requiring Recoupment from Certain Beneficiaries of the Receivership Estate (Docket No. 122, filed April 16, 2003) was denied as inadequately supported.

(9) Motion by Sterling Consulting to Separate Issues Regarding Mr. Mandelman's Alleged Fraud on the Receivership Court and Related Issues from Remainder of the Receivership Case (Docket No. 125, filed April 22, 2003) was denied as inadequately supported.

(10) Receiver's Renewed, Amended, and Verified Motion Based Upon Fraud for Partial Recision of Contract with Michael Mandelman and Partial Restitution (Disgorgement) of Consideration Paid to Mr. Mandelman (Docket No. 134, filed June 12, 2003) was denied as inadequately supported.

(11) Joint Renewal of Motions for an Order Dismissing Receiver's Fraud Motion with Prejudice, or Imposing Alternative Sanction for Default (Docket No. 138, filed June 20, 2003) was denied without prejudice.

(12) Michael Mandelman's Motion to Dismiss Receiver's Renewed, Amended, and Verified Motion Based Upon Fraud (Docket No. 141, filed June 26, 2002) was taken under advisement.

(13) (1) U.S. Motion to Dismiss, or Dismiss IRS from, Receiver's Fraud Motion or for Judgment on the Pleadings (also Renewing Request that All Rule 12(b) Defenses Be Determined First), and (2) Motion to Allow Oversize Memorandum of Law (Docket No. 144, filed June 26, 2003) was taken under advisement.

(14) Joint Motion of Trustee and United States for Clarification and Rule 54(b) Determination for Parts of 6/6/03 Order, in View of (1) Aspects that Are Already Final and Appealable, and (2) Receiver's Recent First Circuit "Confession" Reflecting an Attempted End–Run Around 6/6/03 Ruling

(Docket No. 146, filed July 3, 2003) was taken under advisement.

(15) Receiver's Motion in the Alternative for Either (1) Reconsideration of June 6, 2003, Order on Issue of Burden of Proof, or (2) Certification Under Fed.R.Civ.P. 54(b) (Docket No. 153, filed July 22, 2003) was taken under advisement.

(16) Motion of United States (with Qualified Assent by Receiver) for Leave to Reply to DI# 148 and DI # 151, which Together Comprise the Receiver's Opposition to the U.S. Motion to Dismiss Receiver's Fraud Motion (Docket No. 155, filed July 21, 2003) was allowed.

(17) Michael Mandelman's Motion for Leave to File Reply Memorandum in Support of Motion to Dismiss Receiver's Amended Fraud Motion (Docket No. 157, filed July 29, 2003) was allowed.

(18) Motion to Strike the False Accusation about Government Attorney Noreene Stehlik, Gratuitously Included in Receiver's Submission of Substantive Orders Previously Entered, and Response to New Relief Requested Therein, by United States of America (Docket No. 159, filed July 30, 2003) was denied.

## II. The Zanghi Judgment

### A. Factual Background

The Receiver has alleged, both in this court and in earlier proceedings in the United States District Court for the District of Colorado ("the Colorado Court"), that Michael Mandelman fraudulently sold the Receiver a judgment that had already been satisfied.

The judgment in question was obtained in a 1993 action brought by Mauritz Hayim–Langridge and Indian Distributors Pty Ltd. ("Distributors") against Philip S. Zanghi II and the three bankruptcy debtors: Indian Motocycle Company ("Company"), Indian Motocycle Apparel and Accessories

Company ("Apparel"), and Indian Motocycle Manufacturing ("Manufacturing"). The plaintiffs obtained a default judgment against Zanghi, Apparel, and Manufacturing ("the Zanghi Judgment") for $881,412.50. Mandelman acquired the Zanghi Judgment when he acquired Distributors. In 1994, Zanghi transferred all of the stock in the three bankruptcy debtors to Mandelman, in exchange for cash and a release of the judgment against Zanghi.

In 1995 Mandelman and the Receiver entered into a settlement agreement ("the Original Mandelman Agreement"). Under this agreement, Mandelman would sell his interests in the bankruptcy debtors and in a related company, Indian Motor Company ("Motor"). As a result of this sale, the Receiver would obtain control of the Indian Motorcycle trademark. In return, Mandelman would receive cash, a promissory note, and an ownership interest in the resulting company, Indian Motorcycle Manufacturing, Inc. ("IMMI"). The Original Mandelman Agreement is memorialized in a letter. The letter states that it is the entire agreement between Mandelman and the Receiver. Docket No. 136, Ex. 6 at ¶ 44. The letter also states:

> This Settlement Agreement may be superseded by a more formal agreement to be negotiated by the Mandelman Group and the Receiver. The Mandelman Group and the Receiver agree to negotiate such a more formal agreement in good faith. Failure to consummate a more formal agreement will have no effect upon this Settlement Agreement.

*Id.* at ¶ 28. The Agreement was approved by the Colorado Court on November 15, 1995.

In 1996, the creditors of the bankruptcy estate met pursuant to 11 U.S.C. § 341. Both Mandelman and Receiver's counsel attended this meeting. At this meeting,

Mandelman stated that he had purchased stock in February 1994 in exchange for $30,000 and a release of the judgment against Zanghi personally.

In 1997, the Receiver, alleging that Mandelman continued to hold himself out as a proprietor of the Indian Motorcycle Trademark, moved for a temporary restraining order in the Colorado Court. After a hearing on February 4–5, 1997, a stipulated settlement was read into the record in court, in which Mr. Mandelman stated that he had tendered "all Indian-related assets irrevocably to the receivership estate." Docket No. 134 at ¶ 105.

Later, the Original Mandelman Agreement was modified so that Mandelman received more cash and less stock:

> It is further agreed between and among the parties that Michael D. Mandelman shall receive 3 percent of the shares of the U.S. corporation, shall receive no interest in the European corporation or corporations formed or to be formed, shall receive $2 million in a cash payment at the final closing on the sale of Indian to its purchaser.

Docket No. 143, Ex. 3 at 19. This amendment to the agreement was read into the record at a hearing before the Colorado Court on November 24, 1997.

In September 1999, the Colorado Court made an order allowing the Receiver to pay all prepetition claimants and certain other claimants in full. As part of this distribution, the Receiver paid $1,626,043 to the IRS, pursuant to an IRS levy attaching all funds in the Receivership Estate that would be Mandelman's. The remainder of the contract price, $273,957, was paid to Mandelman.

The parties agree on the foregoing facts. They disagree, however, on whether Mandelman ever purported to sell the Zanghi Judgment to the Receiver.

The Receiver alleges that as part of the consideration for the Original Mandelman Agreement, Mandelman assigned the Zanghi Judgment to the Receiver. No written document mentions the judgment, nor was the judgment explicitly mentioned in the amendments later read into the court records. After the Colorado Court approved the Original Mandelman Agreement, though, the Receiver filed a proof of claim in the bankruptcy cases for the $881,412.50 of the Zanghi Judgment. Docket No. 136, Ex. 7. The Bankruptcy Trustee approved the proof of claim. In the 1999 Settlement Agreement between the Receiver and the Trustee, the Receiver agreed to subordinate this claim to all other creditors' claims. *See In re Indian Motocycle Co.,* 266 B.R. 243, 249 (Bankr.D.Mass.2001), aff'd 288 B.R. 617 (D.Mass.2003).

On August 1, 2001, Mandelman executed a declaration for the IRS in the bankruptcy proceedings. In that declaration, Mandelman stated that

> In 1994 (before the case against Company was dismissed), the judgment was satisfied when Zanghi agreed to and did transfer to me 100% of the stock in the three bankruptcy debtors in exchange for which I released the judgment and paid him an additional $15,000 in cash (because I thought that the stock was worth more than the amount of the judgment even with post-judgment interest). I considered the judgment fully paid by Zanghi in that transaction. I do not recall ever having assigned the judgment to the Receiver and I do not believe that I would have considered such a transaction because, in my mind, there was nothing left to assign.

Docket No. 136, Ex. 8 at 4.

## B. Procedural Background

Following Mandelman's declaration in 2001, the Receiver filed a Motion Based

Upon Fraud or Fraudulent Inducement for Reformation of Contract with Michael Mandelman and Partial Restitution of Consideration Paid to Mr. Mandelman in the Colorado Court. In May 2002, the IRS moved either to dismiss the Receiver's motion for lack of jurisdiction, failure to state a claim, and failure to join necessary parties or, in the alternative, for summary judgment. Also in May 2002, the Receiver propounded interrogatories, requests for document production, and requests for admissions to Mandelman. Mandelman asked the court for a protective order, objecting that discovery could not proceed without a new complaint being filed. The Colorado court did not rule on these motions before the entire case was transferred to this court in July 2002.

In Practice and Procedure Order No. 3, issued on September 5, 2002, this court stated that "Any party that wishes to have a motion considered by this court, even if that motion was previously filed in one of the related actions before a different judge, must file the motion anew in this court, updating it to reflect the various changes in circumstance since the motion was originally filed." PPO No. 3 at 5. In a CMC held on November 15, 2002, this court ordered that the parties file submissions on all issues that they wanted this court to decide by January 15, 2003.

The Receiver first brought the fraud allegations to this court's attention in a Notice to Court of IRS's and Mandelman's Previously–Filed Motion for Protective Order and Request that Court Enter Ruling on Same (Docket No. 54, filed Jan. 29, 2003). That "notice" asked this court to order discovery on the Mandelman fraud allegations. Docket No. 54 at 11. The Receiver did not, however, refile its own motion to reform the contract and recover levied funds.

Both Mandelman and the United States objected to the notice. *See* Docket Nos. 58 and 73. The IRS also filed a motion requesting that, if the Receiver's fraud claim went forward in this court, the IRS be allowed:

(1) the right to have its jurisdictional and other dispositive arguments of law, including its contention of sovereign immunity, resolved first, before other issues, and certainly before it is made to incur the expense of particularity in discovery in a case in which it may have no economic stake; (2) the right to have fraud pled with particularity; (3) automatic disclosures prior to discovery in accordance with Rules 26(a) and (d); (4) the right to a jury trial on any material fact disputes; and (5) such other rights as may appear appropriate as issues not yet contemplated may arise.

Docket No. 61 at 3. Mandelman made an almost identical request. Docket No. 75.

The Receiver then filed a Motion to Separate Issues Regarding Mr. Mandelman's Alleged Fraud on the Receivership Court and Related Issues from Remainder of the Receivership Case (Docket No. 125).

At the Case Management Conference of May 29, 2003, the court ordered that the Receiver was in default for failing to file its Motion to Reform the Mandelman Contract and Recover Levied Funds in this court by the January 15, 2003, deadline that the court had set at the November 15, 2002, CMC. Docket No. 139, Transcript, at 41. The court then ordered the Receiver to proceed by stating his fraud claims with specificity. *Id.* at 43.

Pursuant to this order, the Receiver has filed its Renewed, Amended, and Verified Motion Based Upon Fraud for Partial Recision of Contract with Michael Mandelman and Partial Restitution (Disgorgement) of Consideration Paid to Mr. Mandelman (Docket No. 134) ("the

Renewed Motion"). In this motion, the Receiver asks that the contract be "reformed, in equity, by reducing the purchase price by the amount of the Zanghi Judgment." Docket No. 135 at 3. The Receiver also asks the court to order "partial restitution" of the money paid for the judgment and to order the IRS to disgorge the taxes that Mandelman paid with money from the sale. *Id.* at 4.

■ The motions to preserve certain important pretrial rights (Docket Nos. 61 and 75) are prematurely presented. If at some point a party claims that its rights need to be enforced by an order immediately made, I will hear it. The court cannot, however, appropriately make hypothetical rulings on rights where no need exists for an order for immediate action.

In light of the court's order at the May 29, 2003, CMC, other motions regarding the proper method of proceeding with the fraud claim are denied. The court now considers the Receiver's fraud claim.

## C. Applicable Legal Standard

Pending before the court are motions by the IRS and Mandelman to dismiss the Receiver's Renewed Motion. In deciding a motion to dismiss, this court must accept as true all well-pleaded factual assertions in a counterclaim and draw all reasonable inferences from those assertions in the claimant's favor. *Monahan v. Dorchester Counseling Ctr.*, 961 F.2d 987, 988 (1st Cir.1992). At a minimum, a claimant is "obliged to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Roth v. United States*, 952 F.2d 611, 613 (1st Cir.1991). The court may dismiss a claim only if it appears beyond doubt that the claimant can prove no set of facts that could support a recovery. *Tamburel-*

*lo v. Comm–Tract Corp.*, 67 F.3d 973, 975 (1st Cir.1995).

## D. Defects in the Receiver's Renewed Motion

### 1. The Receiver Has Not Pleaded Fraud with Particularity

■ Rule 9(b) dictates that fraud must be alleged with particularity. The party alleging fraud must specify "(1) the allegedly fraudulent statements; (2) the identity of the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent." *In re Allaire Corp. Securities Litigation*, 224 F.Supp.2d 319, 325 (D.Mass.2002). One purpose of the rule is to give the defendant adequate notice of the fraud claim. *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985). The rule also prevents a plaintiff from filing first and searching for a cause of action later. *Id.*

#### a. Inclusion of the Zanghi Judgment in the Original Mandelman Agreement

■ In this case, the Receiver claims that part of the consideration in the Original Mandelman Agreement was an assignment of the Zanghi Judgment. Although the Agreement nowhere mentions the Zanghi Judgment, the Receiver claims that the assignment is implied in paragraphs 15 and 18 of the Agreement, which state:

15. Mandelman has invested approximately $800,000 in the Companies [Manufacturing, Apparel, Company, and Motor]. The Receiver will cause the Companies to make a promissory note in favor of Mandelman in the amount of $800,000
. . . .

18. The total aggregate liabilities of the Companies to both the Mandelman

Group and to third parties is approximately as follows:

. . .

Companies $0.8 Million for Mandelman

Docket No. 136, Ex. 4.

Working from these sections of the Agreement, the Receiver offers the following explanation of how the Zanghi Judgment was included in the agreement:

48. At the time the Original Mandelman Agreement was negotiated and executed, the receiver advised Mr. Mandelman that all approved claims against the Receivership Estate must have been based solely on cash expended, and could not be based upon any non-monetary assets.

49. The Zanghi Judgment included about $290,000 in actual cash lost to Mr. Mandelman; the rest of the Judgment was for punitive and exemplary damages.

50. As a result of the Receiver's stated cash expense rule (i.e., that claims must be limited to cash expended), exemplary and punitive damages could not form the basis of a claim in the receivership.

51. In paragraph 18 of the Original Mandelman Agreement, Mr. Mandelman represented to the Receiver that Motor, Company, Manufacturing, and Apparel owed him about $800,000 in the aggregate.

52. In the Original Mandelman Agreement, Mr. Mandelman represented that the $800,000 mentioned in paragraph 18 of the Settlement Agreement is the same $800,000 mentioned in paragraph 15 of the Original Mandelman Agreement.

. . . .

63. Mr. Mandelman advised the receiver that all of the total itemization of damages in the amount of $292,137.50 in the Zanghi Judgment is a part of the $800,000 mentioned in paragraph 15 of the Settlement Agreement.

64. Mr. Mandelman advised the receiver that part of the total itemization of damages in the amount of $292,137.50 in the Zanghi Judgment is a part of the $800,000 mentioned in paragraph 15 of the Settlement Agreement.

65. As a result, it is true that the Original Mandelman Agreement referenced the "total aggregate liabilities" owed to the Mandelman Group (at ¶ 18) did not expressly include the punitive damage amounts contained in the Judgment. Rather, it only included the actual approximately $290,000 out-of-pocket expenses.

Docket No. 136, Ex. 4.

As an initial matter, this submission does not explain how or why it is argued that, even assuming that Mandelman had made the above statements, the Agreement indicates that Mandelman was assigning the Judgment to the Receiver. Paragraph 15 of the Agreement says that the Companies must repay the $800,000 to Mandelman. The Receiver does not explain why, if Mandelman was assigning the Zanghi Judgment (a judgment against two of the companies) to the Receiver, the Receiver would agree to cause the companies to pay the amount of the judgment to Mandelman. One would expect that once the judgment was assigned to the Receiver, the companies' payment on the judgment would be owed to the Receiver.

In any case, this narrative falls short of Rule 9(b) requirements, because the Receiver does not specify when or where Mandelman stated that the Zanghi Judgment was included in the $800,000.

### b. Mandelman's Omissions

■ The Receiver also alleges fraudulent omissions, insofar as Mandelman failed to correct the Receiver's assertion, in "numerous pleadings filed by the receiver in both the Receivership Action and the Bankruptcy Cases," that the Receiver owned the Zanghi Judgment. Docket No. 134 at 14, ¶ 88. The Receiver does not identify the pleadings nor when Mandelman should have, but failed to, respond to the statements. Nor does the Receiver allege that Mandelman read any of the pleadings. These allegations therefore do not meet Rule 9(b) standards. *Cf. Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997) (allegations regarding omissions were adequate where the complaint identified specific statements made by defendant and the facts that the statements failed to disclose).

### c. Mandelman's Conversations with Mr. Block

■ The Receiver also alleges that,

In December of 1995, Mr. Mandelman had numerous conversations with Mr. Block, president of Sterling Consulting Corporation, the Receiver[,] during which conversations Mr. Mandelman repeatedly and affirmatively urged the Receiver to include the Zanghi Judgment in its credit bid in the Trustee's 11 U.S.C. § 363 sale.

Docket No. 134 at ¶ 92. This allegation does not specify where the conversation took place. For this reason, it falls short of the Rule 9(b) standard.

### d. Newly Discovered Evidence

■ In the Receiver's opposition to the IRS's motion to dismiss the fraud motion, the Receiver submits a draft of the Stock Purchase Agreement dated December 13, 1995 ("the December 13 Draft"), that the Receiver recently discovered in its own files. The draft is accompanied by a cover letter from Mandelman's attorney, explaining that "this draft attempts to incorporate the language of the Settlement Agreement dated October 9, 1995 and to address many of the issues left open in that agreement." Docket No. 151, Ex. 1.

The December 13 draft contains a paragraph, apparently added by Mandelman, stating that "[a]s of the Closing Date, Sellers shall assign and transfer to the Receiver, their entire right, title and interest in . . . that certain Judgement [sic] rendered by the Honourable [sic] Frank W. Freedman, in the United States District Court for the District of Massachusetts, Civil Action No. 93–30056F." *Id.* at 10. Civil Action No. 93–30056F was the case in which the Zanghi Judgment was rendered.

The Receiver has not explained how exactly the December 13 Draft supports the fraud allegation. Does the Receiver propose to claim that the provision regarding the judgment simply made explicit a term already implicit in the Original Mandelman Agreement? That theory would call into question the Receiver's assertions that the $800,000 mentioned in the Original Mandelman Agreement represented part of the Zanghi Judgment. The December 13 Draft asserts that the Companies will remain liable to Mandelman for $800,000, even after the transactions contemplated in the draft agreement. *Id.* at 22–23. The transactions contemplated in the draft include assignment of the judgment. Thus the December 13 Draft states that even after the judgment is assigned to the Receiver, the Companies will still owe Mandelman $800,000. This implies that the $800,000 is not part of the judgment, contrary to the allegations in the Renewed Motion.

If, on the other hand, the Receiver proposes to argue that Mandelman first offered the Zanghi Judgment in the De-

cember 13 Draft, the Receiver has not explained why his reliance on the draft would be reasonable. The Original Mandelman Agreement, as stated above, was an "entire agreement", "subject to amendment only in writing" signed by both parties. Docket No. 136, Ex. 4 at ¶ 44. The Receiver has not explicitly alleged that the parties ever adopted the December 13 Draft, and has not alleged any other basis for a finding that they did.

■ Because the Receiver does not explain in what way the draft is a fraudulent statement or otherwise supports the Receiver's fraud theory, the newly discovered evidence does not cure the Receiver's failure to plead fraud with particularity. If anything, the December 13 Draft obfuscates the Receiver's assertions that the $800,000 in the Original Mandelman Agreement included the Zanghi Judgment. Presenting evidence in support of indeterminate propositions does not make the Renewed Motion any more specific. Although a court may consider a plaintiff's opposition to summary judgment as a de facto amendment to the original complaint, *Bonilla v. Trebol Motors Corp.*, 150 F.3d 77 (1st Cir.1998), such an amendment will not ward off dismissal where the fraud allegations remain vague.

### e. Further Discovery

■ In short, the Receiver has failed to plead fraud with specificity. The failure to plead fraud with specificity is adequate ground for dismissing a claim. The Receiver asks, however, that the court allow it to engage in discovery, in order to amend its defective fraud claim, before ruling on the motions to dismiss presented by Mandelman and the IRS. Docket No. 150 at 2.

The court will not allow the Receiver to proceed with discovery, for two reasons.

First, the Receiver is incorrect in stating that "the law is well settled that a motion to dismiss for failure to plead fraud with particularity ... should not be granted until discovery has been completed." Docket No. 150 at 5 (citing *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir.1987)). In *Becher*, the Court of Appeals for the First Circuit specifically limited its holding, that discovery may be warranted in certain cases where the plaintiff has fallen short of Rule 9(b)'s requirements, to cases of RICO mail and wire fraud:

> We hold that Rule 9(b) requires specificity in the pleading of RICO mail and wire fraud. This degree of specificity is no more nor less than we have required in general fraud and securities fraud cases. However, *in a RICO mail and wire fraud case, in regards to the details of just when and where the mail or wires were used*, we hold that dismissal should not be automatic once the lower court determines that Rule 9(b) was not satisfied. In an appropriate case, where, for example the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunications facilities, and the specific information as to use is likely in the exclusive control of the defendant, the court should make a second determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint. *We advocate this procedure because of the apparent difficulties in specifically pleading mail and wire fraud as predicate acts.*

*Becher*, 829 F.2d at 290 (citations omitted, emphasis added).

Second, other shortcomings render the fraud claim untenable. The IRS and Mandelman both present three major defenses:

the absence of any injury to the Receiver, the Statute of Frauds, and the statute of limitation. All three defenses support dismissal of the claim.

### 2. The Receiver Has Not Alleged Injury

▮ The Receiver has not alleged facts and circumstances that would support a claim of injury by Mandelman's alleged fraud.

▮ Injury is required for a plaintiff to have standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that "the irreducible constitutional minimum of standing" includes suffering an "injury in fact" that is "actual or imminent") (citations omitted). Injury is also an element of fraud under applicable Colorado law. *See Balkind v. Telluride Mountain Title Co.,* 8 P.3d 581, 587 (Colo.App. Ct.2000) (to state a case for fraud, a plaintiff must show "(1) a fraudulent misrepresentation of material fact was made by the defendant; (2) the plaintiff relied on the misrepresentation; (3) the plaintiff had the right to rely on the misrepresentation; and (4) the reliance resulted in damages").

▮ allegations of injury are "merely conclusions unsubstantiated by fact," the claim must be dismissed. *Boston & Maine Corp. v. Town of Hampton,* 987 F.2d 855, 866 (1st Cir.1993). *See also Munoz–Mendoza v. Pierce,* 711 F.2d 421, 425 (1st Cir.1983) ("where 'injury' and 'cause' are not obvious, the plaintiff must plead their existence in his complaint with a fair degree of specificity").

The Receiver's motion alleges injury only as a conclusion. It states: "Mr. Mandelman's breach of the Original Mandelman Agreement damaged the Receivership Estate." Docket No. 134 at 14, ¶ 87. This statement does not explain how the Receiver claims to have been injured. Also, this statement does not refer to the alleged fraudulent conveyance of the Zanghi Judgment, but to Mandelman's alleged failure to convey control of the Company to the Receiver. *See* Docket No. 134 at 14, ¶ 86. The relief that the Receiver seeks has nothing to do with this allegation. Rather, the Receiver requests a reduction in purchase price by the amount of the Zanghi Judgment. Docket No. 134 at 25.

The Receiver has not alleged facts and circumstances that would support a claim of injury by Mandelman's alleged fraud regarding the Zanghi Judgment. According to the Receiver's own motion, the Receiver filed a Proof of Claim in the Bankruptcy Cases for the Zanghi Judgment. Docket No. 134 at 18, ¶ 113. The Bankruptcy Trustee approved the Proof of Claim, and the Massachusetts Bankruptcy Court allowed the claim. *Id.* at ¶¶ 118, 119. The Receiver's motion does not allege any injury resulting from the fraud, nor does record before this court support any claim of injury to the Receiver.

### 3. The Receiver's Claim Is Barred by the Statute of Frauds

[16] ▮ Statute of Frauds prohibits an action on a contract for the sale of personal property worth more than $5,000 without a writing signed by the party against whom the contract is to be enforced. *See* Mass. Gen. Laws ch. 106, § 1–206; Colo.Rev.Stat. § 4–1–206. In this case, the Receiver has admitted that the Original Mandelman Agreement contains no mention of the judgment. The "newly discovered" December 13 Draft, which does mention the judgment, is not signed by either party.

[17] ▮ Receiver contends that the Statute of Frauds does not necessarily bar his claim because partial performance can satisfy the Statute of Frauds. Docket No.

148 at 10 (citing *Nelson v. Elway*, 908 P.2d 102 (Colo.1995)). The case upon which the Receiver relies explains the rule as follows:

> The part performance doctrine will apply if there is part performance of an oral contract which is: (1) substantial; and (2) required by, and fairly referable to no other theory besides that allegedly contained within the oral agreement.... This rule is based on the premise that the conduct constituting the partial performance must convincingly evidence the existence of the oral agreement.

*Nelson v. Elway*, 908 P.2d 102, 108–109 (Colo.1995) (citations omitted).

The Receiver does not specify what "partial performance" removes the fraud claim from the Statute of Frauds, but a reasonable inference is that the Receiver refers to the performance of the Agreement with Mandelman. This conduct cannot constitute partial performance because it is simply performance of the contract as memorialized in signed writings; it is not performance that can be explained only by the alleged transfer of the judgment to the Receiver. The partial performance exception cannot mean that parties are free to proceed with claims alleging the existence of additional, unwritten terms to a contract whenever a signed contract has been partially performed.

### 4. The Receiver's Claim Is Barred by the Statute of Limitation

 Under both the Massachusetts and Colorado statute of limitation, a suit based on fraud is time barred three years after the fraud could have been discovered with due diligence. *See* Mass. Gen. Laws ch. 260, § 2A, Colo.Rev.Stat. § 13–80–101. The Receiver brought his fraud claim, originally in the Colorado Court, in 2001.

Both the IRS and Mandelman argue that the Receiver should have realized that the judgment was satisfied during the meeting of bankruptcy estate creditors, held pursuant to 11 U.S.C. § 341, in January 1996. At the January 1996 meeting, Mandelman stated that in exchange for stock in Manufacturing, he paid Zanghi "around $30,000 together with the judgment, would we release the judgment against him personally." Docket No. 143, Ex. 1 at 18. The Receiver's counsel was present at this meeting. The IRS initially argued,

> A judgment creditor who accepts property from a judgment debtor does not pay the judgment debtor money unless that property is believed to be worth more than the amount of the judgment. Thus, Mr. Tanner [Receiver's counsel], in January of 1996, had all the facts needed to ascertain that Mandelman assumed the stock received from Zanghi fully paid the judgment.

Docket No. 144 at 27.

The Receiver responds that Mandelman's statement did not put him on notice that the judgment has been satisfied, because Mandelman only stated that the judgment was released against Zanghi personally. Two other judgment debtors, Apparel and Manufacturing, were not released.

 The Receiver is correct that release of one judgment debtor does not necessarily release all debtors. *See Tilcon Capaldi, Inc. v. Feldman*, 249 F.3d 54, 62 (1st Cir.2001). Full payment of a judgment by one party does, however, release the other parties by operation of law. *Id.* (explaining that "the wronged party cannot collect under the judgment *more* than the single sum"); Restatement (Second) of Judgments § 50(2) (1982) ("Any consideration received by the judgment creditor in payment of the judgment debtor's obligation discharges, to the extent of the amount of value received, the liability of

the judgment creditor of all other persons liable for the loss.").

Mandelman's statement at the creditors' meeting was enough to put the Receiver on notice that he should investigate the status of the judgment. The Receiver instead continued to assume that Mandelman had assigned it the entire judgment. Even now, despite acknowledging that the judgment was partially satisfied, as against Zanghi personally, the Receiver maintains that restitution of the full amount is appropriate.

For the above reasons, the Receiver's claim is barred by the statute of limitation.

### E. Conclusion

The IRS has presented additional defenses that apply to the IRS only: failure to state a claim against a third-party creditor, sovereign immunity, tax code limitations, estoppel, and failure to join necessary parties. The court need not reach these, for ample other grounds exist on which to dismiss the fraud claim. Because the Receiver has failed to plead fraud with specificity, because he has alleged no injury resulting from the alleged fraud, and because his claim is barred by both the Statute of Frauds and the statute of limitations, the Motions to Dismiss the Receiver's Renewed, Amended, and Verified Motion Based Upon Fraud are allowed.

### III. Payment of Professionals

 The Receiver has asked this court for an order approving the payment of fees for the Receiver and the Receiver's professionals. Docket No. 24. This motion is denied because no money exists in the Receivership Estate with which to make these payments. The court does not issue orders that cannot have any effect.

In its original request for payment of fees, the Receiver asked that the payment come from one of three sources: (1) the $454,000 in the custody of the Trustee, (2) the funds that the Receiver hoped to recover from the IRS in recompense for Mandelman's alleged fraud, and (3) recoupment from the Receivership Estate. The first option is not available, as this court has affirmed the Bankruptcy Court's holding that the $454,000 belongs in the Bankruptcy Estate. *In re Indian Motocycle Mfg. Co., Inc.*, 288 B.R. 617, 633 (D.Mass.2003). In the attached order, the court denies the Receiver's Renewed, Amended, and Verified Motion Based Upon Fraud for Partial Recision of Contract with Michael Mandelman and Partial Restitution (Disgorgement) of Consideration Paid to Mr. Mandelman, thus eliminating the second potential source of funds as well.

 The last possible source is disgorgement from the creditors who have already been paid. With regard to this option, the Receiver has more recently filed a Motion for Order Requiring Recoupment from Certain Beneficiaries of the Receivership Estate. Docket No. 122. The Receiver has, however, failed to send notice to the beneficiaries from whom recoupment is proposed. Due process requires notice to interested parties of the action and an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Because the Receiver has not complied with due process requirements in the motion for recoupment, that motion is denied.

### IV. Motions to Strike

 The IRS and Mandelman, have moved to strike various filings by the Receiver. Both have filed Motions to Strike Receiver's Effort to Circumvent Failure to Comply with Court Orders and Deadlines by Purporting to "Notice" Other Parties' Motions (Docket Nos. 58, 73). The IRS has

also filed a Motion to Strike That Part of DI# 66 Which Seeks a Declaratory Judgment Regarding Sterling's Liability Under 31 U.S.C. § 3713 (Docket No. 86), a Motion to Strike Mr. Tanner's Fabrication Designed to Manufacture Yet Another Allegation of "Misconduct" Against Government Counsel and Request that Court Admonish Mr. Tanner to Cease the Incivility (Docket No. 98), and a Motion to Strike the False Accusation about Government Attorney Noreene Stehlik, Gratuitously Included in Receiver's Submission of Substantive Orders Previously Entered (Docket No. 159).

I deny the motions to strike, because I want the Court of Appeals to have the full record regarding the conduct of the parties in this case. The parties have all taken positions that were inappropriate for parties seeking to help the court understand the issues and make decisions promptly. The record should reflect this.

By denying the motions to strike, of course, I am not necessarily giving any credence to the material sought to be struck. Where one party seeks to have another party's filings struck for failure to follow correct procedure, I will simply take account of the procedural shortcoming.

## V. Requests for Separate Judgments and Reconsideration

 The United States has asked the court to order a final judgment as to its rejection of the Receiver's equitable subordination claims, and to state that its approval of the settlement between the United States and the Bankruptcy Trustee is now appealable. Docket No. 146. The United States argues that because the denial of the equitable subordination claim in the bankruptcy case is appealable, the court should order a final judgment on the equitable subordination claim in the receivership case as well, to prevent the Receiver from appealing the two denials in piece-

meal fashion. The United States then points out that once all appeals from the bankruptcy settlement are exhausted, the bankruptcy cases will be ready to close.

I will not allow these requests. In my considered view, it is not in the public interest that any part of these Consolidated Proceedings should proceed piecemeal to the Court of Appeals for the First Circuit. Allowing the parties to appeal discrete issues in the case would lead to confusion resulting from various tribunals deciding overlapping issues at different times. As to this court's provisional approval of the bankruptcy settlement, I have made what I regard as appropriate orders, absent a decision by the Court of Appeals for the First Circuit that it will take an appeal before final judgment is ordered by this court.

I therefore deny the request by the United States that I make an order that would facilitate a piecemeal appeal.

In part for the same reasons, I deny the Receiver's request for a Rule 54(b) certification of the court's June 6, 2003, order regarding the receivership taxes. The Receiver asks in the alternative that the court reconsider the June 6, 2003, order. Because the Receiver has not persuaded the court that the order was premised on any error of law or fact, I deny that request as well.

## VI. Remaining Matters

Remaining for consideration is what matters remain to be decided in these Consolidated Proceedings before this court can order a final judgment. The rulings related in this PPO dispose of all motions now pending. The Bankruptcy Trustee has indicated that no more issues remain in the bankruptcy case, absent appeals from the settlement. The Receiver has litigated all of its claims.

The IRS has proffered a calculation of tax due from the Receiver (Docket No. 158, filed July 28, 2003). The amount calculated by the IRS—$1,065,270—is consistent with the court's rulings in PPO No. 5. The IRS also asks the court to rule on the interest due. The Receiver has not yet addressed the issue of interest. The court will defer ruling on both the amount of the tax and the interest until the Receiver has had a reasonable time to respond.

The court has not determined whether a tax penalty is due in the Receivership case. The IRS's counsel has stated that he will "recommend that the IRS waive the penalty in order to expedite a final resolution of these cases." Docket No. 147 at 5–6, n.3. More recently, the IRS stated an intention to file a separate motion for summary judgment on the penalty. Docket No. 158 at 13. The court will allow the IRS file whatever motion it wishes to file on or before September 30, 2003. The Receiver will then have two weeks to file a responsive pleading.

All parties may also file, on or before September 30, 2003, statements of their respective positions regarding an order for final judgment.

## ORDER

(1) Receiver's Motion for Order Approving Payment of Professionals (Docket No. 24) is DENIED;

(2) Motion of United States (1) To Strike [DI# 54] Receiver's Effort to Circumvent Failure to Comply with Court Orders and Deadlines by Purporting to "Notice" Other Parties' Motions and (2) To Enter Default–Dismissal of Receiver's Motion to Reform Mandelman Contract and Recover Levied Funds (Docket No. 58) is DENIED;

(3) Motion of United States to Preserve Certain Important Pre–Trial Rights if the Court Allows the Receiver's Reformation/Wrongful–Levy Motion to Go Forward (Docket No. 61) is DENIED;

(4) Motion of Michael Mandelman (1) To Strike [DI# 54] Receiver's Effort to Circumvent Failure to Comply with Court Orders and Deadlines by Purporting to "Notice" Other Parties' Motions and (2) To Enter Default–Dismissal of Receiver's Motion to Reform Mandelman Contract and Recover Levied Funds (Docket No. 73) is DENIED;

(5) Motion of Michael Mandelman to Preserve Certain Important Pre–Trial Rights if the Court Allows the Receiver's Reformation/Wrongful–Levy Motion to Go Forward (Docket No. 75) is DENIED;

(6) U.S. Motion (1) To Strike That Part of DI# 66 Which Seeks a Declaratory Judgment Regarding Sterling's Liability Under 31 U.S.C. § 3713, and (2) to Dismiss Remainder (Raising Issues of Transferee Liability) for Lack of Ripeness (Docket No. 86) is DENIED;

(7) United States' Motion to Strike Mr. Tanner's Fabrication (in DI # 79) Designed to Manufacture Yet Another Allegation of "Misconduct" Against Government Counsel and Request that Court Admonish Mr. Tanner to Cease the Incivility (Docket No. 98) is DENIED;

(8) Motion by Sterling Consulting for Order Requiring Recoupment from Certain Beneficiaries of the Receivership Estate (Docket No. 122) is DENIED;

(9) Motion by Sterling Consulting to Separate Issues Regarding Mr. Mandelman's Alleged Fraud on the Receivership Court and Related Issues from Remainder of the Receivership Case (Docket No. 125) is DENIED;

(10) Receiver's Renewed, Amended, and Verified Motion Based Upon Fraud for Partial Recision of Contract with Michael Mandelman and Partial Restitution (Dis-

gorgement) of Consideration Paid to Mr. Mandelman (Docket No. 134) is DENIED;

(11) Joint Renewal of Motions for an Order Dismissing Receiver's Fraud Motion with Prejudice, or Imposing Alternative Sanction for Default (Docket No. 138) is DENIED;

(12) Michael Mandelman's Motion to Dismiss Receiver's Renewed, Amended, and Verified Motion Based Upon Fraud (Docket No. 141) is ALLOWED;

(13) (1) U.S. Motion to Dismiss, or Dismiss IRS from, Receiver's Fraud Motion or for Judgment on the Pleadings (also Renewing Request that All Rule 12(b) Defenses Be Determined First), and (2) Motion to Allow Oversize Memorandum of Law (Docket No. 144) is ALLOWED;

(14) Joint Motion of Trustee and United States for Clarification and Rule 54(b) Determination for Parts of 6/6/03 Order, in View of (1) Aspects that Are Already Final and Appealable, and (2) Receiver's Recent First Circuit "Confession" Reflecting an Attempted End–Run Around 6/6/03 Ruling (Docket No. 146) is DENIED.

(15) Receiver's Motion in the Alternative for Either (1) Reconsideration of June 6, 2003, Order on Issue of Burden of Proof, or (2) Certification Under Fed.R.Civ.P. 54(b) (Docket No. 153) is DENIED;

(16) Motion of United States (with Qualified Assent by Receiver) for Leave to Reply to DI# 148 and DI # 151, which Together Comprise the Receiver's Opposition to the U.S. Motion to Dismiss Receiver's Fraud Motion (Docket No. 155) is ALLOWED;

(17) Michael Mandelman's Motion for Leave to File Reply Memorandum in Support of Motion to Dismiss Receiver's Amended Fraud Motion (Docket No. 157) is ALLOWED; and

(18) Motion to Strike the False Accusation about Government Attorney Noreene Stehlik, Gratuitously Included in Receiver's Submission of Substantive Orders Previously Entered, and Response to New Relief Requested Therein, by United States of America (Docket No. 159) is DENIED.

(19) The court allows the IRS to file a submission, on or before September 30, 2003, stating its position regarding any tax penalty it claims from the Receiver.

(20) All parties are allowed until September 30, 2003, to file statements of their respective positions regarding an order for final judgment.